**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-80063-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

B. G. G.,

    Defendant.
_____/

**ORDER OF DISMISSAL**

THIS CAUSE is before the Court upon the United States of America's proposed Order of Dismissal Without Prejudice, filed on September 2, 2020. (DE 8).[1] On September 3, 2020, Defendant filed a Response (DE 5) and a "Supplement Seeking Alternative Relief" (DE 6). Defendant does not oppose dismissal but rather asserts that dismissal *with prejudice* is appropriate. (DE 5 at 1). The Government replied to Defendant's filings on September 10, 2020. (DE 7).

On October 7, 2020, I entered an Order Requiring Supplemental Briefing on the issue of whether the Information should be dismissed with or without prejudice with a focus on whether the Government's tactical use of Rule 48(a) is appropriate in these circumstances. (DE 9). In

---

[1] In seeking dismissal of the Information pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, the Government initially submitted an "Order of Dismissal" to the Court via email to my courtroom deputy on September 2, 2020. The proposed Order of Dismissal was also served on defense counsel, which prompted Defendant's responsive filing in the court record the following day, September 3rd. (DE 5). Rule 47, however, mandates that "[a] party applying to the court for an order must do so by motion." Fed. R. Crim. P. 47. Because the Government seeks an order from this Court but did not do so by way of motion, I have construed the Government's proposed Order of Dismissal as a motion, and I caused it to be entered in the court record as a Motion to Dismiss Information, where it now appears at Docket Entry 8.

compliance therewith, the Government and Defendant filed their respective supplemental memoranda. (DE 10; DE 11). Oral argument was held on January 5, 2021. (DE 12; DE 15). All of the Parties' submissions and my Orders in this matter have been filed under seal in the court record, though oral argument held by videoconference was not closed. (DE 12 at 2). Following the hearing, the Government filed a Notice of Supplemental Authority (DE 17), which I have also taken into consideration. For the reasons set forth below, the Information is dismissed with prejudice.

## BACKGROUND

On Friday, August 28, 2020, the Government filed an Information with the Clerk of Court that was docketed on Monday, August 31, 2020. (DE 3 at 4–11). The Information charged Defendant in two counts with (1) conspiracy to receive illegal "kickbacks" (in the form of over $200,000 in fees for purported speaking engagements) from a prescription drug distributor in exchange for Defendant's allegedly improper writing of prescriptions for a particular drug in violation of 18 U.S.C. § 371 and (2) illegal remuneration in violation of 42 U.S.C. § 1320A-7B. (*Id.*). The Information states that Defendant committed the alleged offenses from August 2012 to August 31, 2015. (*Id.* at 4, 14). Because the five-year statute of limitations for these offenses expired on August 31, 2020, the Government filed the Information three days prior to that date. Defendant has at no time consented to prosecution by information or waived his right to indictment by a grand jury. (*Id.* at 18). On September 2, 2020, the Government sought dismissal of the Information without prejudice. (DE 8).

## DISCUSSION

### I. Dismissal Under Rule 48(a)

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, "[t]he government may, *with leave of court*, dismiss an indictment, information, or complaint."[2] Fed. R. Crim. P. 48(a) (emphasis added). The primary purpose of the "'leave of court' requirement is to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss . . . over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *see also United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982) ("This prosecutorial harassment involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution."). A district court may decline to permit dismissal if the government's motion is "prompted by considerations clearly contrary to the public interest." *Rinaldi*, 434 U.S. at 29 n.15. In other words, the leave of court requirement empowers a district court "to exercise discretion over the propriety of a prosecutorial motion to dismiss"—that is, whether the government has sought dismissal in good faith, or whether the government's motivations are contrary to the public interest. *Salinas*, 693 F.2d at 351.

"Generally, unless a contrary intent is clearly expressed, [R]ule 48(a) dismissals are without prejudice" and are appropriate when "the reason for dismissal does not go to the merits or demonstrate a purpose to harass." *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991). In evaluating whether to grant leave to dismiss an indictment, information, or complaint without prejudice under Rule 48(a), "the government is entitled to a presumption of good-faith." *United*

---

[2] The Rule further provides that "[t]he government may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a).

*States v. Dyal*, 868 F.2d 424, 428 (11th Cir. 1989).[3] Broadly speaking, however, the government cannot use "Rule 48(a) to gain a position of advantage or to escape from a position of less advantage in which the Government found itself as the result of its own election." *Salinas*, 693 F.2d at 353 (internal quotation marks and citation omitted).

Here, the Government filed an "Order of Dismissal" under Rule 48(a) seeking "leave of Court" to dismiss the Information. (DE 8). Therein, the Government states that it filed the unconsented Information "to 'institute' it within the meaning of 18 U.S.C. § 3282(a)." (DE 8 at 1–2). Because Defendant has declined to waive his right to indictment by a grand jury and consent to proceed by way of Information, the Government requests dismissal of same without prejudice. (*Id.*). Notably, by seeking dismissal on September 2, 2020—two days after the statute of limitations expired—the Government ensured that its proposed Order of Dismissal would be entered at a time that would toll the limitations period under § 3288.[4]

In his Response to the Government's proposed Order of Dismissal, Defendant argues that the August 28, 2020 Information filed without Defendant's consent was a legal nullity, and thus

---

[3] To overcome the presumption of good faith in cases where the government has failed to articulate any reason or factual basis for dismissal in the Rule 48(a) motion or proposed order, the defendant must show that "(1) the [] dismissal was in bad faith, or (2) that the defendant has been prejudiced in his ability to attack the prosecutor's motives due to the trial court's failure to require submission of adequate reasons . . . ." *Id.* (internal quotation marks omitted); *see also Matta*, 937 F.2d at 568. In the instant case, the Government has identified the reason it seeks a Rule 48(a) dismissal in its proposed Order of Dismissal; therefore, I do not find this rule relevant to the case at hand.

[4] The Government represents that its decision to file the proposed Order of Dismissal *after* the expiration of the limitations period is immaterial to tolling same for six months, as 18 U.S.C. § 3289 likewise allows this period to be tolled if the "information . . . is dismissed for any reason [within six months] *before* the period prescribed by the applicable statute of limitations has expired." 18 U.S.C. § 3289 (emphasis added); DE 10 at 3–4. I acknowledge the Government's point; however, resolution of the case before me is limited to its facts under which the Government sought a 48(a) dismissal *after*, not prior to, the expiration of the limitations period. As such, 18 U.S.C. § 3288 is the operative statute. In addition, regardless of whether § 3288 or § 3289 applied to this case, the same issue of strategic use may still arise.

because the statute of limitations has run, dismissal should be granted *with* prejudice. (DE 5). In its Reply, the Government reiterates its position that dismissal *without prejudice* is appropriate. (DE 7 at 3–4).

It is no mystery that the Government strategically timed its filing of the Information and the Order of Dismissal "to protect against the running of the statute of limitations" in light of the Southern District of Florida's temporary suspension of grand juries due to the coronavirus pandemic. (DE 8 at 1–2). Indeed, the Government has been transparent on that point and regarding its intention to seek an indictment in this case upon the reconvening of grand juries. (*Id.*). The Government represents that it has acted in good faith in seeking to charge Defendant and subsequently dismiss such charges and that Defendant will not suffer prejudice, as he can later raise, at the indictment stage, any arguments related to the running of the statute of limitations. (*Id.* at 2–3).

At oral argument, counsel for Defendant and counsel for the United States agreed that ordinarily in this District, prior to filing a criminal information, the prosecutor and defense counsel discuss whether a defendant consents to proceed by way of information; if a defendant does not, then the prosecutor will not file an information absent a waiver of indictment. Counsel for the United States conceded that prosecutors follow this procedure precisely because a waiverless information cannot be used to prosecute a defendant and that in this case, the Government filed the information solely for statute of limitations purposes.[5]

---

[5] Also, during oral argument, defense counsel argued that the Government improperly delayed bringing this prosecution in that, prior to the pandemic-induced suspension of grand jury proceedings, the Government had been investigating Defendant for at least five years for conduct that occurred between 2012 and 2015. Defense counsel maintained that all of the facts alleged in the Information were known to the Government before the suspension and that it did not obtain any new evidence either immediately before or during the suspension period. Counsel for the

I disagree with the Government's implicit characterization of its motivations and the effect of its actions on Defendant as non-issues. For one, the Government's desired course of conduct at least arguably falls within the definition of "prosecutorial harassment" in that it seeks to "charg[e], dismiss[], and recharg[e]," *Rinaldi*, 434 U.S. at 29 n.15, "at a different time or place deemed more favorable to the prosecution." *Salinas*, 693 F.2d at 351. Indeed, by its own admission, the Government's sole motivation behind filing the Information was to "preserve the ability to proceed with criminal charges against the [D]efendant" in the future. (DE 10 at 6).

In light of my discussion, *infra*, in which I conclude that the August 28, 2020 Information was not "instituted" within the meaning of 18 U.S.C. § 3282, dismissing the Information without prejudice now, as the Government requests, would allow for an end-run around the statute of limitations and contravene the Fifth Amendment's guarantee of a defendant's right to be prosecuted by way of grand jury indictment. Allowing such tactics, wherein the Government seeks dismissal of the Information solely to safeguard its ability to charge Defendant at a later date, would not serve the strong public interest of upholding statutory and constitutional protections. The Government's proposed action would also have the effect of eroding the fundamental purpose of statutes of limitations—"to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 115 (1970). A criminal statute of limitations could not serve its purpose if the prosecution could just extend the limitations period whenever so doing served its ends by filing a charging instrument that was not viable for prosecution. Because my discretion to dismiss with prejudice under Rule 48(a) is principally aimed at protecting a

---

United States advised that the Government conducted one interview related to this case during the grand jury suspension.

defendant's rights, *Rinaldi*, 434 U.S. at 29 n.15, I will exercise such discretion here, where the Government seeks to take action inconsistent with honoring those rights through its "use [of] Rule 48(a) [to] achiev[e] a tactical advantage." *Dyal*, 868 F.2d at 428.

I devote considerable attention below to the substantive legal question of whether the Government "instituted" the unconsented Information by filing it with the Court and thus, by seeking dismissal without prejudice now, may secure a six-month extension of the limitations period. This issue involves the intersection and interplay of Rule 48, Rule 7, 18 U.S.C. § 3282, and 18 U.S.C. § 3288, all operating under the command of the Fifth Amendment to the Constitution. In resolving this question, I believe it is necessary to examine the language and purpose of each, as well as the chronology of their passage.

The framing of this inquiry in the context of a Rule 48 dismissal is unusual. Normally, a statute of limitations defense would be raised by a defendant after indictment on a motion to dismiss. Here, however, in furtherance of its strategy, the Government moves for the relief of dismissal without prejudice in order to extend the statute of limitations. I construe my discretion to dismiss with prejudice under Rule 48 as broad enough to encompass this scenario. Were I to grant the Government's request, I would enable and invite an action I believe to be unlawful. Dismissal without prejudice would also be futile given my finding that, as a matter of law, the statute of limitations has expired. But for Rule 48 and § 3288, I would have simply ignored the Information as a nullity.[6]

---

[6] Even if the Government were correct in its assertion that filing the unconsented Information was a legally permissible way to "institute" it for statute of limitations purposes, dismissal with prejudice might still be appropriate because, on these facts, the Government's conduct could constitute strategic overreaching. However, I do not need to resolve that question here because I have concluded that the Government's desired use of the statutory scheme is unlawful.

## II. Statute of Limitations

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Federal Rule of Criminal Procedure 7(a) "gives effect to" this constitutional provision by requiring that felonies, defined as offenses punishable by death or imprisonment of more than one year, "be prosecuted by an indictment." Fed. R. Crim. P. 7(a) (quoting 1944 advisory committee note to subdivision (a)). As an exception to this Rule, subdivision 7(b) allows for a non-capital felony offense to "be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b).[7]

Title 18, section 3282 of the United States Code is the statute of limitations for non-capital, federal crimes, including both felony and misdemeanor offenses. This section, captioned "Offenses not capital," provides:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or *the information is instituted* within five years next after such offense shall have been committed.

18 U.S.C. § 3282(a) (emphasis added). This limitations period may be tolled if the "indictment or information charging a felony is dismissed for any reason *after* the period prescribed by the applicable statute of limitations has expired . . . ." 18 U.S.C. § 3288 (emphasis added). In such an instance,

---

[7] In contrast, Rule 58 of the Federal Rules of Criminal Procedure permits the prosecution of a misdemeanor to "proceed on an indictment, information, or complaint" and that of a petty offense to proceed on any of the foregoing as well as "on a citation or violation notice." Fed. R. Crim. P. 58(b)(1).

> a new indictment may be returned . . . within six calendar months of the date of the dismissal of the indictment or information . . . or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular jury is convened, which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

*Id.*

Here, the Information seeks to charge Defendant with two non-capital federal offenses; therefore, § 3282 is the appropriate statute of limitations. The Parties do not dispute this, nor do they dispute that the limitations period expired on August 31, 2020; that the Government filed the Information with the Clerk of Court prior to the expiration of the limitations period; or that the Information was not accompanied by a waiver of indictment as required under Rule 7(b) to prosecute a non-capital felony offense. Rather, at the heart of the Parties' dispute is the legal significance, or lack thereof, of filing the unconsented Information with the Clerk. Specifically, the Parties dispute whether such filing "instituted" the Information within the meaning of 18 U.S.C. § 3282(a) such that its dismissal after the expiration of the statute of limitations would trigger § 3288's tolling provision.

In construing the meaning of § 3282's "information is instituted," I acknowledge that there is no controlling law on point in this Circuit or that has been handed down by the United States Supreme Court. Thus, to support its position, the Government primarily relies on an opinion of the United States Court of Appeals for the Seventh Circuit, *United States v. Burdix-Dana,* 149 F.3d 741 (7th Cir. 1998). (DE 7 at 2–3; DE 8 at 2). In *Burdix-Dana*, the government filed a waiverless information approximately four days before the statute of limitations expired. 149 F.3d at 742. About two weeks later, outside the five-year limitations period, the government sought an

9

indictment, which the grand jury returned for the same offense charged in the previously filed information. *Id.* Burdix-Dana then moved to dismiss that indictment for having been found after the expiration of the statute of limitations, a request that the district court denied. *Id.* Burdix-Dana then appealed. *Id.*

The Seventh Circuit held that "the filing of the information [even absent a waiver of indictment] is sufficient to institute [the information] within the meaning of 18 U.S.C. § 3282." 149 F.3d at 743. To arrive at this holding, the court distinguished between instituting a *prosecution* pursuant to Federal Rule of Criminal Procedure 7(b), which it concluded was impermissible based on an unconsented information, and instituting an *information* pursuant to § 3282, which, in its estimation, even absent a waiver of indictment, may serve the limited purpose of tolling § 3282's statute of limitations. *Id.* Essentially, the Seventh Circuit maintained that the same information may be invalid for one purpose (to prosecute) while valid for another (to toll the statute of limitations for such a prosecution). *See id.* This distinction necessarily involves, as it did in *Burdix-Dana*, declining to equate "institute" as used in § 3282 with "the ability to proceed with a prosecution." *Id.* at 742.

Over the years since *Burdix-Dana* was decided, a number of federal district courts presented with the same, or substantially similar, issue have applied its holding. *See, e.g.*, *United States v. Holmes*, No. 18-cr-00258, 2020 WL 6047232, at *8 (N.D. Cal. Oct. 13, 2020); *United States v. Briscoe*, No. CR RDB-20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020); *United States v. Marifat*, WBS-17-0189, 2018 WL 1806690, at *1–2 (E.D. Cal. Apr. 17, 2018); *United States v. Sharma*, No. 4:14-CR-61, 2016 WL 2926365, at *2–3 (S.D. Tex. May 19, 2016).[8] One

---

[8] In *United States v. Holmes* and *United States v. Briscoe*, the district courts found that the unconsented informations filed to toll the statute of limitations were valid for that purpose in the context of the coronavirus pandemic, which led to the suspension of grand jury proceedings in the

district court decision that predated *Burdix-Dana*, *United States v. Watson*, 941 F. Supp. 601 (N.D. W. Va. 1996), similarly concluded that "an information is 'instituted' when it is filed with the clerk of court . . . ." 941 F. Supp. at 603–04. It reasoned that "the filing of the information, and not the Rule 7(b) waiver of indictment, is the event critical to tolling the applicable limitations period; otherwise, there could be no valid basis for prosecution on an information until a Rule 7(b) waiver had occurred." *Id.* at 603 (relying on the implicit reasoning in a Tenth Circuit case, *United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992)).

At least one federal district court has declined to follow *Burdix-Dana*, while another has questioned its interpretation of § 3282 but ultimately declined to depart from it on *stare decisis* grounds. *See United States v. Machado*, No. CRIM.A.04-10232-RWZ, 2005 WL 2886213 (D. Mass. Nov. 3, 2005) (disagreeing with *Burdix-Dana*); *United States v. Stewert*, 425 F. Supp. 2d 727 (E.D. Va. 2006) (following *Burdix-Dana* with some reservations, including finding that it is only "logical to presume that a[] criminal information could not be 'instituted' for the purposes of the statute of limitations under § 3282 until the waiver of indictment occurred pursuant to the dictates of Rule 7(b)").

In *Machado*, Judge Zobel parted ways with *Burdix-Dana* by concluding that "a court in possession of an information but not in possession of a waiver of indictment lacks subject matter jurisdiction over the case," rendering such an information "virtually meaningless." *Machado*, 2005 WL 2886213, at *2 (internal quotation marks and citation omitted). She continued that "[i]t defies logic and reason that the court may accept an information without waiver for the purpose of

---

respective districts during portions of the limitations periods. *Holmes*, 2020 WL 6047232, at *8; *Briscoe*, 2020 WL 5076053, at *2 & n.1.

11

applying the statute of limitations, when the same document is 'meaningless' for purposes of subject matter jurisdiction and prosecution." *Id.*

Having examined the sparse case law on this issue, and after studying the legislative history of the relevant statutes, I decline to conclude that the unconsented Information in this case was "instituted" within the meaning of § 3282 when the Government filed it with the Clerk of Court. To hold otherwise would allow the Government's requested dismissal without prejudice to toll the already-expired, five-year statute of limitations period even though the same Information is invalid for purposes of prosecution. Instead, I find that because the Information against Defendant was not accompanied by a waiver of indictment and because the Government did not subsequently obtain a waiver prior to the limitations period's expiration, the Information was not instituted for purposes of § 3282.

In my view, § 3282 presupposes that an instituted information can initiate a criminal prosecution. After all, an information is a charging instrument whose primary practical purpose, aside from apprising a defendant of the charges against him, is to commence a prosecution. It would be inconsistent with the Fifth Amendment and Federal Rule of Criminal Procedure 7 to recognize an invalid charging document as a mere mechanism for extending a statute of limitations period, though the same legal instrument could not serve to initiate criminal proceedings on the charges contained therein or confer subject matter jurisdiction on the court in which those proceedings are to take place.

The legislative and legal history of 18 U.S.C. § 3282 lends support for this conclusion. The first Congress enacted the statute of limitations for "Offenses not capital"—what we know today as 18 U.S.C. § 3282—through the Crimes Act of 1790, the first federal criminal laws.[9] The

---

[9] *See Crimes Act*, FED. JUD. CTR., https://www.fjc.gov/history/timeline/crimes-act.

language of the statute has largely remained unchanged over the past 230 years. The original 1790 version provided: "No person shall be prosecuted, tried, or punished for any offense not capital, except as provided in section one thousand and forty-six ["Crimes under the revenue laws"], unless the indictment is found or *the information is instituted* within two years next after such offense is committed."[10] Congress amended the statute in 1876 to extend the limitations period from two to three years.[11] In 1948, after engaging in an extensive revision and reorganization of the federal criminal laws, Congress codified the statute of limitations for non-capital offenses in Title 18 of the United States Code.[12] In 1954, Congress extended the limitations period from three years to five years.[13]

In contrast to 18 U.S.C. § 3282's long history, the Federal Rules of Criminal Procedure were not adopted by the United States Supreme Court until 1944.[14] As such, at the time that the first Congress drafted the phrase "information is instituted," it could not have intended that an

---

[10] Act of April 30, 1790, ch. 9, § 32, v.1, p. 119, as cited in the Revised Statutes of the United States, 1873–74, § 1044, p. 193, https://archive.org/details/revisedstatutes01statgoog/page/n5/mode/2up (emphasis added).

[11] An act to amend section 1044 of the Revised Statutes relating to limitations in criminal cases, ch. 56, 44 Congress, P.L. 44-56, 19 Stat. 32 (1876).

[12] Act of June 25, 1948, ch. 645, 62 Stat. 683; *see also* John L. McClellan, *Codification, Reform, and Revision: The Challenge of a Modern Federal Criminal Code*, 1971 DUKE L.J. 663, 683–85 (1971).

[13] Act Sept. 1, 1954, ch. 1214, § 12(b), formerly § 10(b), 68 Stat. 1145.

[14] *See Rules: Federal Rules of Criminal Procedure*, FED. JUD. CTR., https://www.fjc.gov/history/courts/rules-federal-rules-criminal-procedure. The Rule was created on the heels of a period during which the Supreme Court held that a criminal defendant could waive various constitutional rights, such as trial by jury, right to counsel, protection against double jeopardy, privilege against self-incrimination, and the right of confrontation. *See* Advisory Committee Note 2 to Subdivision (b) of Fed. R. Crim. P. 7.

instituted information be one that comports with Rule 7 of the Federal Rules of Criminal Procedure because that Rule did not yet exist. It also appears that the content of Rule 7(b) did not predate its adoption.

For context, the grand jury as an institution of accusation is as old as the common law itself.[15] Under English common law, which influenced our Republic's laws from their earliest days, criminal informations were permitted only to charge misdemeanors.[16] As Blackstone remarked in 1893, "informations (of every kind) are confined by the constitutional law to mere misdemeanours only; for, whenever any capital offence is charged, the same law requires that the accusation be warranted by the oath of twelve men before the party shall be put to answer it."[17] Though some dispute exists regarding the precise origins of the criminal information in England, historians do not question the legality of same as a charging instrument for misdemeanors dating back to at least the seventeenth century.[18]

In the colonies, the first regular grand jury was established in 1635.[19] From that time until the beginning of the Revolution, grand juries became increasingly common, and, "unlike [their]

---

[15] *See* 1 JAMES FITZJAMES STEPHEN, A HISTORY OF THE CRIMINAL LAW OF ENGLAND 253 (London, MacMillan & Co. 1883) ("The system of accusation which led up to, and to use a modern legal expression 'sounded' in ordeal, was the origin of the grand jury of later times, and of our own days.").

[16] *Id.* at 294.

[17] 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND IN FOUR BOOKS 310 (Philadelphia, J.B. Lippincott Co., 1893).

[18] 1 STEPHEN, *supra* note 14, at 295–96 ("[F]rom the earliest times the king accused persons of offenses not capital in his own court by the agency of his immediate legal representatives without the intervention of a grand jury.").

[19] RICHARD D. YOUNGER, THE PEOPLE'S PANEL: THE GRAND JURY IN THE UNITED STATES, 1634–1941 6 (1963).

English progenitor . . . [functioned], not as an arm of the executive, but as a defense against monarchy."[20]

With respect to the role of informations in the emerging American legal system, a federal district court related in 1870,

> At the time of the revolution and of the adoption of the constitution, it was the practice in the court of king's bench for the king's attorney-general to file informations in the name and on behalf of the king, in a class of cases not above the grade of misdemeanors, without any previous showing to the court, but in the discretion of that officer. This discretion was not, however, exercised, except in cases where the offense tended to disturb or endanger the king's government, or to molest him in the regular discharge of his royal functions, and where delay would be dangerous.
>
> There was another class of offenses of the same grade, which could be proceeded against by information filed by the master of the crown office— a person appointed as the king's attorney to prosecute in behalf of the public, on complaint made by a subject or by a common informer. This officer could not substitute an information for the indictment of a grand jury, unless upon a showing and leave of court. The practice was to present affidavits of the offense, and move the court for a rule on the accused to show cause, and if the affidavits were not sufficiently answered leave was granted to file a criminal information in cases below the degree of felony.
>
> Congress by proposing, and the states by ratifying [the Fifth Amendment], left all offenses not capital or infamous to be prosecuted by information or by indictment, as the circumstances of each case would seem to require, and as the common law would sanction. Indeed, this constitutional provision produced no change in the practice or law, except, perhaps, as regards a class of misdemeanors regarded as infamous crimes, and which might, before the amendment, be prosecuted by information.

*United States v. Shepard*, 27 F. Cas. 1056, 1058–59 (E.D. Mich. 1870) (No. 16,273).

I note that the federal Constitution, which went into operation in 1789, did not establish grand juries and that the Fifth Amendment was not ratified until 1791,[21] meaning that the Crimes

---

[20] Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, its Secrecy, and its Process*, 24 FLA. ST. L. REV. 1, 10 (1996).

[21] Kadish, *supra* note 19, at 11–12.

Act of 1790 preceded the Fifth Amendment. However, the language of the Fifth Amendment closely tracks an amendment John Hancock proposed to Congress the same year the Constitution was adopted.[22] Thus, based on this proposed amendment, which suggests that the substance of the Fifth Amendment was circulating prior to its ratification, and based on the longstanding common law practice of limiting prosecution by information to misdemeanors and petty offenses, I infer that the drafters of the statute of limitations in the Crimes Act of 1790 contemplated that felony charges would only be brought by indictment, while lesser offenses may be brought by way of information.[23]

With this context in mind, the legal concept of a defendant accused of a felony waiving his constitutional right to prosecution by grand jury indictment does not emerge until the twentieth century. S*ee, e.g.*, *United States v. Gill*, 55 F.2d 399, 401 (D. N.M. 1931). Initially, in the first half of the twentieth century, some states amended their constitutions and statutes to allow for prosecution of non-capital felonies by information.[24] Congress thereafter followed suit with Rules 7(a) and (b) of the Federal Rules of Criminal Procedure.[25]

---

[22] *Id.* at 11 n.81. The language of the proposed amendment that Hancock forwarded to Congress from the Massachusetts Convention stated, "That no person shall be tried for any Crime by which he may incur an infamous punishment or loss of life until he be first indicted by a Grand Jury, except in such cases as may arise in the Government & regulation of Land & Naval forces." *Id.*

[23] This is particularly likely because the principal drafter of the Crimes Act of 1790, Oliver Ellsworth, was a delegate to the Constitutional Convention. WILLIAM GARROTT BROWN, THE LIFE OF OLIVER ELLSWORTH 197 (1905). While serving as a senator from Connecticut, Ellsworth famously drafted the Judiciary Act of 1789, which created the federal court system. *Id.* Ellsworth also "[r]eported back from a conference committee the first twelve Constitutional amendments which Congress submitted to the states, ten of which were ratified." *Id.* at 200. In 1796, George Washington appointed Ellsworth the third Chief Justice of the United States Supreme Court. *Id.* at 238–39.

[24] Charles S. Potts, *Waiver of Indictment in Felony Cases*, 3 SW. L. REV. 437, 437–42 (1949).

[25] *Id.*

Title 18, United States Code, section 3288, unlike section 3282, expressly applies to felony charges. 18 U.S.C. § 3288 ("Whenever an indictment or information charging *a felony* is dismissed . . . . (emphasis added)). Congress originally enacted § 3288 in 1948.[26] Prior to the codification of 18 U.S.C. § 3288, a very similar statute, enacted in 1934, was in effect that provided,

> Whenever an indictment is found defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned at any time during the next succeeding term of court following such finding, during which a grand jury thereof shall be in session.[27]

In *United States v. Durkee Famous Foods*, the Supreme Court identified the legislative intent of 18 U.S.C. § 587 (now 18 U.S.C. § 3288) as that expressed in a 1934 letter from the Attorney General to the Senate Judiciary Committee, which stated in part that "legislation is recommended providing that in any case in which an indictment is found defective or insufficient for any cause, after the period prescribed by the statute of limitations has run . . . a new indictment may be returned at any time during the first succeeding term of court at which a grand jury is in session." 306 U.S. 68, 71 n.2 (1939). In 1964, Congress amended § 3288 "to correct a 'loophole' in the law which occurred when it became possible to charge [felonies] by information as well as indictment." *United States v. Charnay*, 537 F.2d 341, 354 (9th Cir. 1976). As Senate Report 1414 stated in reference to the 1964 changes, precipitated in part by a letter from then-Attorney General Robert F. Kennedy,

> The purpose of the proposed legislation is to amend sections 3288 and 3289 of title 18, United States Code, so as to provide that the provisions of those sections will extend to felony proceedings instituted by information as well as by indictment. The sections concern cases where a new indictment is returned after a prior indictment has been dismissed, because of an error, defect, or irregularity with respect to the grand jury, or because it has been

---

[26] Act of June 25, 1948, ch. 645, 62 Stat. 628.

[27] Act of May 10, 1934, ch. 278, 48 Stat. 772.

17

>found otherwise defective. *The amendments would therefore permit reindictment in similar cases where an information was filed after the defendant waived in open court prosecution by indictment.*[28]

The legislative history of § 3288 indicates that although the statute permits tolling of the limitations period specifically for felonies, Congress did not intend to create a means to bypass the statute of limitations altogether by filing a defective information. The 1964 amendments "extend[ed] the application of the statutes to felony proceedings instituted by information rather than by indictment."[29] Congress amended the statutes in this manner in response to Federal Rule of Criminal Procedure 7(b), given that

>[a]t the time of the enactment of the statutes from which sections 3288 and 3289 are derived, felony prosecutions could be initiated only by grand jury indictment. However, rule 7 of the Rules of Criminal Procedure for the U.S. District Courts, authorizes the prosecution of a noncapital felony by information if the defendant in open court waives prosecution by indictment.[30]

Thus, the legislative history demonstrates that Congress intended §§ 3288 and 3289 to toll the limitations period at § 3282 for dismissed informations where those informations comported with Rule 7(b).

Because the historical record indicates that individuals accused of non-capital felonies could not waive indictment and consent to proceed by way of information at the time that Congress created § 3282's predecessor, it follows that when Congress first wrote "information is instituted" in 1790, it most likely intended that any information that was filed would constitute a valid

---

[28] S. REP. NO. 88-1414, at 1 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3257–58 (emphasis added).

[29] *Id.*

[30] *Id.* at 2 (proceeding to quote Federal Rule of Criminal Procedure 7(b)). The Report continued, "The proposed amendments recognize that felony prosecutions may be instituted by informations and that dismissals of such prosecutions because of technical defects in the informations should be accorded treatment similar to that accorded prosecutions instituted by indictments." *Id.*

18

charging document, which at the time meant a document that charged a misdemeanor or lesser offense. The idea that an information could be instituted to toll the limitations period, but not to prosecute the accused, was not salient at the statute's inception, nor at the time § 3288 or its predecessor were enacted.

## CONCLUSION

I appreciate that the historical moment we are living through, which gave rise to the temporary suspension of grand juries, prevented the Government from obtaining indictments in this District from approximately March 26, 2020 to November 17, 2020.[31] But our legal system has experienced public emergencies before, and it will experience them again. Allowing the applicability of our constitutional norms to ebb and flow with the times is not becoming of a democracy under the rule of law. Indeed, if our laws are to carry any force, they must stand despite the trials and tribulations of society. Congress may certainly make exceptions; however, it has not done so here. In fact, in March of 2020 when the Department of Justice asked it to suspend criminal statutes of limitations during the coronavirus pandemic and for one year thereafter, Congress declined to make such a special dispensation.[32]

Accordingly, for the foregoing reasons and based on a careful review of the record in this case, the relevant legal authorities, and the legislative history and historical context of § 3282, it is hereby **ORDERED AND ADJUDGED** that:

---

[31] Admin. Order 2020-87, *In re: Partial Sequestration of Grand Jurors* (Nov. 16, 2020); Admin. Order 2020-22, *In re: Coronavirus Public Emergency, Order Concerning Grand Jury Sessions* (Mar. 26, 2020).

[32] Abbe David Lowell, *et al.*, *Problems with Federal Courts Tolling Statutes of Limitations*, LAW 360 (May 7, 2020), https://www.law360.com/articles/1270318. Of note, at oral argument, the Government stated that it does not seek to toll the statute of limitations in this case by any means (*e.g.*, equitable tolling) other than 18 U.S.C. § 3288.

19

1. The Government's proposed Order of Dismissal, construed as a Motion to Dismiss Information Without Prejudice (DE 8), is **GRANTED IN PART AND DENIED IN PART**.

2. The Information (DE 3) is **DISMISSED WITH PREJUDICE**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 11th day of January, 2021.

Donald M. Middlebrooks
United States District Judge

Copies to: Counsel of Record