UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

vs.                                     CASE NO. 20-80063-MIDDLEBROOKS(s)

BART GERARD GATZ.

_____/

## BART GATZ'S MOTION TO DISMISS INDICTMENT

Bart Gatz, through counsel, respectfully files this motion to dismiss the Superseding Indictment because it falls outside of the statute of limitations. This Court previously dismissed the Information with prejudice. D.E. 19. The Government appealed. The Court of Appeals did not rule on the merits of the appeal, but instead found (in a 2-1 opinion) that procedurally, a dismissal on the merits could only come after an indictment of the defendant. *See* Appellate Opinion, dated November 22, 2022 ("If the grand jury later indicts [Gatz], he can still raise a statute of limitations defense. We do not pass on the statute of limitations issue today and do not determine whether the sealed information was instituted within the meaning of section 3282(a)."). The Government has now filed an untimely indictment, so the motion to dismiss is ripe. Because the Government did not properly institute a case against Dr. Gatz within the five-year statute of limitations, the Court should dismiss the Superseding Indictment with prejudice for the same reasons it previously dismissed the Information.

## INTRODUCTION

This case stems from the Government's repeated attempts to end-run the statutorily established statute of limitations in order to grant itself an extension that Congress expressly declined to grant. The Government's contention that it has the power to unilaterally extend a statute of limitations in its unfettered discretion by filing an unconsented information, even though that information could not constitutionally support a prosecution, is plainly incorrect. The Government's

actions eviscerate the very purpose and meaning of the requirement that criminal charges may only be instituted as set forth in Fed. R. Crim. Pro. 7. within the statutorily-defined period. As this Court previously stated, "[a] criminal statute of limitations could not serve its purpose if the prosecution could just extend the limitations period whenever so doing served its ends by filing a charging instrument that was not viable for prosecution." D.E. 19 at 6.

### Course of Proceedings

On August 28, 2020, the Government filed an Information against Dr. Bart Gatz, charging him with conspiring to accept kickbacks to prescribe opioids in violation of 18 U.S.C. § 371 during a time period that ended on August 31, 2015. D.E. 3. The Information also charged Dr. Gatz with receiving and soliciting kickbacks for prescribing opioids on August 31, 2015, in violation of 42 U.S.C. § 1320A-7B. Dr. Gatz did not consent to the filing of these charges by information, either before or after the Information was filed.

The Government did not serve Dr. Gatz with the Information, or otherwise advise Dr. Gatz of its existence, until 6:33pm on August 31, the very same day that the five-year statute of limitations expired. This precluded Dr. Gatz from moving to dismiss it before the statute expired. The Government then waited until September 2, 2020, after the running of the statute, to move to dismiss without prejudice pursuant to Federal Rule of Criminal Procedure 48(a). D.E. 8. In its motion, the Government claimed that pursuant to 18 U.S.C. § 3288, its unilateral filing of the Information served to toll the statute of limitations because it was dismissing the Information after the running of the statute. *Id.*

The Government asserted in its motion that it intended to obtain an Indictment upon such time as it was able to do so in the Southern District of Florida (which was, at that point, not seating grand juries as a result of the COVID-19 pandemic). The Government did not explain why it did not seek to indict Dr. Gatz before the running of the statute in any of the other jurisdictions where grand

juries were active in which it has brought similar cases involving Insys (the pharmaceutical company that the Government alleges paid kickbacks to Dr. Gatz in exchange for writing prescriptions for their opioid medicine designed to treat cancer pain)[1], or why it had not done so in the 4 ½ years before the court was shut down in March 2020.

Dr. Gatz opposed the Government's motion to dismiss without prejudice given that the Government had not obtained consent to the Information and the statute of limitations had run. D.E. 5. Dr. Gatz asserted that the Information should instead be dismissed with prejudice. *Id.* The Government replied and opposed Dr. Gatz's request for dismissal with prejudice. D.E. 7.

In response to these filings, this Court ordered the Government and Dr. Gatz to file supplemental briefing "on the issue of whether this matter should be dismissed with or without prejudice." D.E. 9. The Government filed its supplemental brief on October 21, 2020 (D.E. 10), and Dr. Gatz filed his supplemental brief on November 5.  D.E. 11.

This Court held a hearing on January 5, 2021. D.E. 22. On January 11, 2021, in a lengthy, well-researched order issued after multiple rounds of briefing and oral argument, this Court denied the Government's Rule 48(a) motion to dismiss without prejudice. D.E. 19. This Court found that because the Government had filed its Information tactically and for the specific purpose of evading

---

[1] As of last year, the Government had brought at least 27 related Insys cases in the Southern District of New York, Southern District of Ohio, District of New Hampshire, Eastern District of Michigan, District of Connecticut, District of Rhode Island, District of New Jersey, Southern District of Alabama, Middle District of Florida, Western District of Pennsylvania, and District of Massachusetts.  At least 9 out of these 11 jurisdictions were available for grand jury proceedings during the Summer of 2020, well in advance of August 31, 2020.  *See, e.g., Grand Juries Carry on During Pandemic,* United States Courts, https://tinyurl.com/zm435eac; General Order (D.Conn. June 12, 2020); Administrative Order 20-AO-34 (E.D. Mich. June 9, 2020); General Order 20-28 (D.Mass. June 29, 2020); Fourth General Order (D.R.I. June 29, 2020); Administrative Order 20-25 (D.N.H. July 24, 2020); Standing Order M10-468 (S.D.N.Y. July 27, 2020); Amended General Order 2:20-mc-3-38FtM (M.D. Fla. July 1, 2020); Administrative Order 2:20-mc-394-MRH (W.D. Pa. August 27, 2020); General Order 20-16 (W.D. Pa. June 30, 2020). Of these nine operating grand juries, Dr. Gatz attended Insys programming in at least six districts.

the statute of limitations, and because the Information was not properly "instituted" given that Dr. Gatz had not consented to it, the statute of limitations had run and no further prosecution of Dr. Gatz on these charges was permissible:

> Were I to grant the Government's request, I would enable and invite an action I believe to be unlawful. Dismissal without prejudice would also be futile given my finding that, as a matter of law, the statute of limitations has expired. But for Rule 48 and § 3288, I would have simply ignored the Information as a nullity.

D.E. 19 at 7. Accordingly, this Court dismissed with prejudice, finding that the Government's action "would allow for an end-run around the statute of limitations and contravene the Fifth Amendment's guarantee of a defendant's right to be prosecuted by way of grand jury indictment….A criminal statute of limitations could not serve its purpose if the prosecution could just extend the limitations period whenever so doing served its ends by filing a charging instrument that was not viable for prosecution." *Id*. at 6. This Court examined the plain meaning of the statutes and rules, as well as the legislative history, and practical implications of the Government's position. Each one of these considerations, the Court concluded, favored dismissing the case with prejudice.

The Government appealed the dismissal with prejudice. On November 22, 2022, a divided panel in the Eleventh Circuit reversed, finding that this Court abused its discretion in dismissing the Information with prejudice, as it failed to properly apply a presumption of good faith and to overcome that presumption with a finding of prosecutorial bad faith in seeking dismissal. Judge Luck, joined by Judge Lagoa, reasoned that Rule 48(a)'s "leave of court" requirement confers very "limited" authority to interfere in the exercise of prosecutorial discretion, and that this Court erred in focusing its analysis on the Government's reasons for filing the Information rather than on its motion to dismiss. Because the majority concluded that this Court abused its discretion in dismissing the information with prejudice, they did not reach the issue of whether filing an information without a waiver of indictment institutes the prosecution, and tolls the statute of limitations, under sections

3282(a) and 3288. Op. 12, n.3. It vacated and remanded the dismissal order but noted that "[i]f the grand jury later indicts B.G.G., he can still raise a statute of limitations defense." Op. 33.

Judge Wilson dissented. He explained that prosecutors "concocted what they hoped was a workaround" of the statute of limitations, and that this Court "saw through the government's ploy." Dissent at 1. He emphasized that this Court should have been affirmed because the prosecution's tactics, "plain and simple," were in "bad faith and for the purpose of harassment" and were "'to achieve a tactical advantage in derogation of [Dr. Gatz's] rights.'" *Id.* at 3 (quoting *United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989)).

Judge Wilson noted that the majority opinion ran contrary to Supreme Court precedent directing courts "'to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss . . . over the defendant's objection.'" *Id.* at 8 (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977), and asking, "Is there any set of facts that better fits this definition?"); *see also United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973) ("[W]e do not think Rule 48(a) intends the trial court to serve merely as a rubber stamp for the prosecutor's decision."). The dissent concluded that the majority's reading of Rule 48(a) as limiting a district court's discretion to dismiss an invalid information would be "repugnant to the constitutional protections afforded criminal defendants." *Id.* at 13.

Dr. Gatz filed a Petition for Rehearing *En Banc.* The petition was denied on January 23, 2023.

On July 13, 2023, almost three years *after* the statute of limitations expired in this case, and almost eight months after the appeal was decided (the Eleventh Circuit opinion is dated November 22, 2022, and the mandate issued on January 31, 2023), the Government filed a sealed Superseding Indictment against Dr. Gatz.  Weeks after filing the new Indictment, and a day before the scheduled arraignment, the Government filed a motion to dismiss the information without prejudice. D.E. 32.

## ARGUMENT

Although the Government knew that the five-year statute of limitations against Dr. Gatz would expire on August 31, 2020, the Government did not properly charge Dr. Gatz with a crime before that date. A grand jury did not indict him before the statute ran. And an information was not properly instituted against him. The Information that the Government filed on August 28, 2020 was invalid because it did not comply with Fed. R. Crim. Pro. 7.

Criminal practitioners—prosecutors, defense lawyers, and judges—all know that in most cases there is a five-year statute of limitations. This bright line is important so that individuals under investigation can move on with their lives when the five years pass. It is also important to the administration of justice, as it is extremely difficult to prosecute, defend, or preside over stale cases.

When the COVID-19 pandemic hit, the Department of Justice asked Congress to extend the five-year statute of limitations because many grand juries around the country were suspended.  But a bipartisan Congress quickly and definitively rejected DOJ's request, expressly declining to extend the statute of limitations. As a result of Congress's choice not to extend the statute despite the limited availability of grand juries, DOJ nonetheless had several options in cases where the statute was expiring.  It could obtain the consent of the defense to an information. Many defendants consented to be charged by information because they were cooperating and did not want to risk the re-emergence of grand juries where they would be seen as obstructionist. It could seek an indictment in a district with operative grand juries. Many prosecutors did just that. But Dr. Gatz did not consent to an information and the Government did not seek an indictment from another district, though nothing prevented it from doing so. Instead, it tried an end-run around the five-year statute of limitations by filing an information without Dr. Gatz's consent, thinking that it could dismiss that information without prejudice and give itself a six-month extension under 18 U.S.C. § 3288.

In a lengthy and thoughtful order, this Court rightfully rejected this ploy, noting that the

Government could use it to extend the statute of limitations in every case (not just during a crisis) by six months, something the plain language of the statute and the legislative history clearly did not allow or intend. This Order, now law of the case, still applies and the case should be dismissed.

## I.   WITHOUT THE CONSENT OF THE DEFENDANT, THE FILING OF AN INFORMATION DOES NOT TOLL THE STATUTE OF LIMITATIONS.

The Superseding Indictment should be dismissed because the underlying unconsented-to Information did not toll the statute of limitations. The premise of the Government's position is that due to the challenges of the COVID-19 era it should be excused for its failure to afford Dr. Gatz his constitutional right to a timely indictment by grand jury (among the most bedrock principles of our legal system). Though obscured by the Government's constant reference to COVID-19 throughout its pleadings in this case, however, the Government does not argue for a pandemic-limited exception in the vein of impossibility. Instead, the Government contends that existing procedural rules permit it to grant itself a six-month extension to obtain a grand jury indictment at will, simply by filing and then dismissing an unconsented-to information. While the backdrop of the Government's action was the pandemic *this time*, once enshrined into law by a decision for the Government in this case, the Government would have a blank check for at least a six-month extension of the statute in every case in its unfettered discretion. *See* D.E. 22, Hearing Transcript, Jan. 5, 2021, at 18-20 (Government agreeing with this Court that its statutory interpretation would permit it to grant itself a six-month extension whenever it wants).

Despite the challenges of the pandemic, such a result is unwarranted. As this Court aptly concluded,

> I appreciate that the historical moment we are living through . . . prevented the Government from obtaining indictments in this District from approximately March 26, 2020 to November 17, 2020.  But our legal system has experienced public emergencies before, and it will experience them again. Allowing the applicability of our constitutional norms to ebb and flow with the times is not becoming of a democracy under the rule of law.  Indeed, if our laws are to carry any force, they

must stand despite the trials and tribulations of society. Congress may certainly make exceptions; however, it has not done so here. In fact, in March of 2020 when the Department of Justice asked it to suspend criminal statutes of limitations during the coronavirus pandemic and for one year thereafter, Congress declined to make such a special dispensation.

D.E. 19 at 19. Pandemic or no pandemic, our laws have long required that a grand jury indictment must be issued, or an information must be instituted within the applicable statute of limitations in order for a defendant to be prosecuted for a felony. As set forth in the Fifth Amendment to the United States Constitution, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Pursuant to the governing statute in this case, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. §3282(a).

There is no dispute that Dr. Gatz was not indicted by a grand jury in the five-year period following his last alleged criminal act (August 31, 2015). D.E. 3. Accordingly, the only way his prosecution can go forward is if an information was "instituted" before August 31, 2020. It was not, and as a result the statute of limitations against Dr. Gatz has run.

While it is true that the Government *filed* an information against Dr. Gatz on August 28, the Government did not *institute* one. In order for a charging instrument to be "instituted," it must not only be filed but must be actually effective to commencing a federal criminal case, which in the case of a felony charge means it must be accompanied by a waiver of indictment.[2] *See* Fed. R. Crim. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and

_____

[2] Similarly, an indictment that is merely filed with the court, without having been acted on by the grand jury, has not been "found" and cannot satisfy the statute of limitations. *See, e.g., United States v. Ellis*, 622 F.3d 784, 792 (7th Cir. 2010); *United States v. Thompson*, 287 F.3d 1244, 1251-52 (10th Cir. 2002).

of the defendant's rights—waives prosecution by indictment").

An invalid information no more institutes a case than does an indictment that was not issued by a grand jury. *See, e.g., United States v. Teran*, 98 F.3d 831, 835 (5th Cir. 1996) ("In the absence of a valid waiver, the lack of an indictment in a felony prosecution is a defect affecting the jurisdiction of the convicting court."); *United States v. Moore*, 37 F.3d 169, 173 (5th Cir. 1994) ("Unless there is a valid waiver, the lack of an indictment in a federal felony case is a defect going to the jurisdiction of the court." (quoting *United States v. Montgomery*, 628 F.2d 414, 416 (5th Cir. 1980))); *United States v. Wessels*, 139 F.R.D. 607, 609 (M.D. Pa. 1991) ("Unless there is a valid waiver, the lack of an Indictment in a federal felony case is a defect going to the jurisdiction of the court.").  The "jurisdictional nature of the waiver is grounded in the Fifth Amendment, which requires the government to prosecute felonies by indictment. . . . [U]ntil a defendant has waived indictment pursuant to Rule 7(b), an information filed with the clerk of court cannot perform the same charging function as an indictment. Indeed, a court in possession of an information but not in possession of a waiver of indictment lacks subject matter jurisdiction over the case; such an information is virtually meaningless." *United States v. Machado*, 2005 WL 2886213, at *2 (D. Mass. Nov. 3, 2005). *See also Wessels,* 139 F.R.D. at 609 ("Without the waiver required by Rule 7(b) of the Federal Rules of Criminal Procedure, an Information charging a felony offense is virtually meaningless.").

Here, the Government did not obtain a waiver of indictment from Dr. Gatz (either in open court as required by Rule 7(b), or otherwise), and it had been advised that Dr. Gatz was not going to provide one at any point. Knowing that it did not have a waiver and that the Information therefore was a nullity and subject to immediate dismissal, it filed the Information under seal so that Dr. Gatz could not learn about it, and then waited three days and until 6:33pm on the day the statute of limitations ran before it served the Information on Dr. Gatz.

Because the Government did not have a waiver of indictment from Dr. Gatz, the information it filed was never instituted. Contrary to the Government's argument, it is not so that the term "'instituted' requires only that the Government file an information within the five-year period." Gov't App. Brief at 25. This fact is made clear by the very meaning of the term. To "institute" something means to "to originate and get established" or "to set going." Webster's Collegiate Dictionary (2020) (online version); *see also* Merriam-Webster's Dictionary (2020) (online version) ("to originate and get established;" "to set going"). Similarly, Black's Law Dictionary defines "institute" as "[t]o begin or start; commence." Black's Law Dictionary (2020) (online version). Absent a waiver of indictment under Rule 7(b), an information purporting to charge a felony does not "originate," "get established," "set going," "begin," "start," or "commence" anything; to the contrary, it is a legal nullity, which is precisely why the Government moved to dismiss it a few short days after filing it. A defendant cannot be arraigned on such an information without a waiver. *See* Fed. R. Crim. P. 10, Adv. comm. notes to 2002 amendment.  An information is "instituted" only when it is effective to "get established" or "commence" a federal criminal case, which in the case of a felony means it is accompanied by a waiver of indictment. Fed. R. Crim. P. 7(b).

This conclusion is supported by numerous cases, including *Jaben v. United States*, 381 U.S. 214 (1965). In *Jaben*, the Supreme Court determined that a case was not "instituted" for purpose of tolling the statute of limitations in a felony tax evasion by the filing of a complaint the day before the statute was to expire, followed by a grand jury indictment after the statute had already run. *Id.* The applicable statute provided that "[w]here a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States." *Id.* at 215-16.  Just as the Government did here, in *Jaben* it argued that the mere filing of a complaint operated to invoke the 9-month grace period under the relevant statute. *Id.* at 217. Accordingly, the

Government contended, it was irrelevant that the complaint was insufficient because it did not establish probable cause, a necessary condition to issuance of an arrest warrant and a preliminary hearing. *Id.*; *see also* Fed. R. Crim. P. 4–5.

The Supreme Court disagreed. As the Court explained, the Government's position "provides no safeguard whatever to prevent the Government from filing a complaint at a time when it does not have its case made, and then using the nine-month period to make it." *Id.* at 220. The Court rejected the very procedural machination attempted by the Government in this case:

> [I]t follows from its position that once having filed a complaint, the Government need not further pursue the complaint procedure at all, and, in the event that the defendant pressed for a preliminary hearing and obtained a dismissal of the complaint, that the Government could nonetheless rely upon the complaint . . . as having extended the limitation period.

*Id.* at 218. Rejecting the government's position, the Court interpreted the word "instituted" to require that the complaint be "adequate *to begin effectively* the criminal process prescribed by the Federal Criminal Rules." *Id.* at 220 (emphasis added). Thus, *Jaben* rejected the suggestion that the mere filing of a complaint "institutes" it. *Id.* at 220. A felony information to which a defendant does not consent is not "adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules." *Id.* Similarly, because Dr. Gatz did not waive prosecution by indictment—a fact the Government knew when it filed the information—the information was not "instituted" for purposes of Section 3282.

Likewise, in *Smith v. United States*, 360 U.S. 1 (1959), the Government attempted to charge a capital offense by information after it obtained a waiver of indictment. But under the then-applicable version of Rule 7(a), a capital offense could only be prosecuted by indictment (even with a waiver from the defendant). The Supreme Court held that because "the United States did not have authority to file an information," as a result the information "did not confer power on the convicting court to hear the case." *Smith*, 360 U.S. at 10. Here, as in *Smith*, because the Government lacked

authority under the now-applicable version of Rule 7 to initiate a charge by information without a waiver of indictment, the Government lacked authority to file the Information and to confer power on the Court to proceed on the charges.

In a case much like this one, *United States v. Machado,* 2005 WL 2886213 (D. Mass. Nov. 3, 8 2005), the court reached this very conclusion. In *Machado*, the government filed an information before the statute of limitations expired, but the defendant did not waive indictment until after the statute had run. The court held that the filing of the information did not "institute" it for purposes of Section 3282, and it dismissed the charges as time-barred. *Id.* at *3. The court applied standard tools of statutory construction to determine the plain meaning of the term "institute," *id.* at *2, and reached the conclusion that "institute" did not mean the same as "file."  It noted that an information without a waiver does not bestow subject matter jurisdiction over the case, and that it is instead "virtually meaningless." *Id.* (quoting *Wessels,* 139 F.R.D. at 609). The court reasoned that "since an information is the functional and constitutional equivalent of an indictment only when accompanied by a valid waiver of indictment, no reason exists why that rule should not apply in the statute of limitations context." *Id.* at *2.

And in *United States v. Sharma*, 2016 WL 2926365 (S.D. Tex. May 19, 2016), the court found that the timely filing of an information was not sufficient to toll the statute of limitations where the defendant did not waive indictment. Noted the court, "[t]he fact is, an offense of a felony nature can only proceed to prosecution by an indictment, unless the indictment is waived by the defendant. . . . No waiver was obtained within the limitations period; therefore, no case was 'initiated' that the government was 'able to prosecute.'" *Id.* at *4.

The Government has previously cited *United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992), for the proposition that Rule 7(b) proscribes only the prosecution of a defendant without a waiver, not the filing on an information without one. Gov't App. Br. at 28.  But, as *Cooper* itself

recognizes, absent a waiver "the clear language of the statute of limitations prohibits the government from prosecuting beyond that time." *Id.* at 962. This is "plainly a limitation upon the power to prosecute or to punish. It is, therefore, jurisdictional, and noticeable at this [appellate] stage of the proceedings." *Id.* at 962, quoting *Waters v. United States*, 328 F.2d 739, 743 (10th Cir. 1964). The *Cooper* court found that because an effective waiver was not filed before the running of the statute of limitations, the charging document was a nullity and the conviction had to be reversed. *Cooper*, 956 F.2d at 963.

The Government has employed the same maneuver—filing an invalid, non-consensual information to toll the statute of limitations—in numerous cases, creating uncertainty across the circuits. *See, e.g., United States v. SanFilippo*, Appeal Number 22-11175-E (pending in the 11th Cir.); *United States v. De La Torre*, 20-20182-Cr-Williams/Torres (Doc. 71) (S.D. Fla. Oct. 21, 2022) (finding that "the Government's filing of something other than a Grand Jury indictment" is not sufficient "to satisfy the relevant statutes of limitations absent the consent of the accused"); *Sharma*, 2016 WL 2926365 (same); *Machado*, 2005 WL 2886213 (same); *United States v. Stewart*, 425 F. Supp. 2d 727 (E.D. Va. 2006) (noting that *Machado* has the "better argument").[3]

In *United States v. Xavier*, Case No. 20-80054-CR-Middlebrooks (S.D. Fla. Sept. 8, 2021), this Court explained why *B.G.G.* was rightly decided:

> In *B.G.G.*, I dismissed the unconsented Information with prejudice under Rule 48 and in doing so *I found that under the particular facts of that case, the Government's use of the statutory scheme was an improper effort to circumvent the limitations period.* There, no indictment had yet been filed. However because the Government had asserted that it intended to seek an indictment subsequent to dismissal, I

---

[3] There is a split in the district courts. *See, e.g., United States v. Rothenberg*, 554 F. Supp. 3d 1039, 2021 WL 4704583 (N.D. Cal. Aug. 13, 2021) (holding that "a waiverless information" tolls the statute of limitations); *United States v. Webster*, Case No. 20-20172, 2021 WL 4952572 (S.D. Fla. Sept. 28, 2021) (same); *United States v. Weiss*, 588 F. Supp. 3d 622 (E.D. Pa. 2022) (same); *United States v. Rosecan*, 528 F. Supp. 3d 1289, 1294 (S.D. Fla. 2021) (same) (applying *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998)).

analyzed the question of whether prosecution would be barred by the five-year statute of limitations, as I perceived that to be relevant to my decision whether to dismiss with or without prejudice. I ultimately concluded that the unconsented Information was effectively a legal nullity. On that basis, I held that any indictment filed after the running of the statute of limitations would have been untimely, and accordingly dismissal without prejudice would have been futile.

*Id.* at 5 (internal citations omitted) (emphasis added).

The Government relies on the old, criticized decision of *United States v. Burdix-Dana*, 149 F.3d 741 (7th Cir. 1998) and several follow-along district court orders. But the judges in those cases explained that they simply felt obligated to follow *Burdix-Dana. See United States v. Kruse*, Case No. 1:20-CR-249-RP (W.D. Tex. Dec. 21, 2020); *United States v. Dixon*, Case No. 6:20-CR-00006 (W.D. Va. Oct. 26, 2020); *United States v. Holmes*, 2020 WL 6047232 (N.D. Cal. Oct. 13, 2020); *United States v. Briscoe*, 2020 WL 5076053 (D. Md. Aug. 26, 2020).[4]

But the reasoning of *Burdix-Dana* (and these follow-along orders) does not hold up. *See Machado*, 2005 WL 2886213 (rejecting *Burdix-Dana* as the decision "defies logic and reason"); *Sharma*, 2016 WL 2926365, at *4 ("An information that is filed within the limitations period is not automatically timely filed, particularly when the filing is hidden from the defendant and public scrutiny. The fact is, an offense of a felony nature can only proceed to prosecution by an indictment, unless the indictment is waived by the defendant....No waiver was obtained within the limitations period; therefore, no case was 'initiated' that the government was 'able to prosecute'") (internal citations omitted); *Stewart*, 425 F. Supp. 2d 727 (although the court felt bound to follow *Burdix-*

---

[4] Before the orders were issued in 3 of the 4 cases, the government already had obtained grand jury indictments replacing the informations (the Holmes and Briscoe defendants were indicted in July 2020, the *Kruse* defendant in October 2020). Similarly, in Burdix-Dana, the government sought and obtained an indictment within 14 days of filing an information. The indictment within that period was required because no preliminary examination under Fed. R. Crim. P. 5.1 is possible for an unconsented-to information.  See Fed. R. Crim. P. 5.1(a)(3). Whatever the merits of *Burdix-Dana* on the general constitutional and statutory interpretation issues, it is readily distinguishable and reflecting an attempt to conform to the applicable procedural rules, unlike the rule-violate strategy employed by the Government here.

*Dana*, it explained that the *Machado* court had the "better argument"); *see also* D.E. 19 at 9-12.

The truth is that the 25-year-old, criticized *Burdix-Dana* decision did not engage the arguments raised in this motion or those raised by this Court in its order. It simply said in conclusory fashion that "instituted" and filed meant the same thing while at the same time acknowledging that some of the arguments raised by the defendant were "compelling." The district courts following *Burdix-Dana* and its conclusory language may have been influenced by the pandemic, but that is no reason to disregard the rules. This is especially so in light of the fact that the Government chose to charge by waiverless information despite the fact that on August 31, well into the pandemic, there were at least nine available districts in which it had previously indicted Insys cases similar to this one, all of which already reinstated grand jury proceedings (including the Middle District of Florida). *See* Footnote 1 above. There can be no dispute that there was venue in some or all of these districts, given that: 1) the Information alleges that the conspiracy existed not only in Palm Beach County but also "elsewhere," D.E. 3 at 5, 11; 2) the Government prosecuted Dr. Gatz's alleged coconspirators in these other (operational) districts; and 3) Dr. Gatz attended Insys programming in at least six of these districts.

As this Court recognized, it is not bound by *Burdix-Dana* or its flawed reasoning. Similarly, in *United States v. De La Torre*, Judge Torres recognized that the case is "non-binding" and explained:

> Putting aside for a moment that *Burdix-Dana* is not binding on this Court, the case itself is cursorily reasoned and thereby less persuasive. For example, the Seventh Circuit made no reference whatsoever to the text of the Constitution that provided the defendant's right to be prosecuted pursuant to a Grand Jury indictment; nor did the opinion consider the practical and historical importance of that right. If it had done so, then it may have considered and addressed that discerning the meaning of "instituted" is not merely a question of statutory interpretation but also a nuanced issue of constitutional criminal procedure . . . That nuance is described persuasively in Judge Middlebrooks's [*B.G.G.*] decision.

*De La Torre*, 20-20182-Cr-Williams/Torres (Doc. 71 at 16-17). Judge Torres went on to harshly

criticize *Burdix-Dana*'s "flawed" reasoning for "having overlooked the constitutional implications" of the case, "ultimately ignor[ing] the express command from the Supreme Court that 'criminal limitations statutes are to be liberally interpreted in favor of repose,'" and "neglect[ing] to meaningfully engage with *Jaben* [], a case that is arguably binding on this Court and is certainly highly instructive…." *Id.* at 18 (internal citations omitted).

The *Machado* court correctly explained the harmful consequences of following *Burdix-Dana*: "It would allow[] prosecutors to file an information, wait indefinitely, then present the matter to a grand jury well beyond the statute of limitations but within six months of the dismissal of the information." 2005 WL 2886213, at *3. *See also* Dissent at 14 ("There is no question that the government sought to dismiss the information to achieve a tactical advantage in derogation of [Dr. Gatz's] rights—the very definition of bad faith in this context. And the government's plan to 'charg[e], dismiss[ ], and recharg[e]' [Dr. Gatz] is the exact conduct the Supreme Court has said constitutes harassment in this context.") (internal citations omitted). Former federal prosecutors, as amici, told the Eleventh Circuit, "the tactical use of tolling statutes, as in this case… not only violates a defendants' Due Process rights, it erodes our rules-based system of justice":

> This case, if decided as the government urges, would open the door to an unchecked extension to the criminal statute of limitations long after our hard times are in the rear-view mirror. This outcome would not only create bad law but would also contravene Congress' intent and would be disastrous to the functioning of our criminal justice system.

Brief Of Former Federal Prosecutors As Amici Curiae In Support Of Appellee at 5, Attached as Exhibit A.

## II. THE PLAIN LANGUAGE OF THE RULES AND STATUTES AND THE LEGISLATIVE HISTORY CONTRADICT THE GOVERNMENT'S POSITION.

The Government's contention that the word "instituted" means the same as the word "filed" is belied by the fact that in other sections of the same chapter of Title 18, Congress expressly based

the statute of limitations on the mere "filing" of an information. *See* 18 U.S.C. § 3293 ("No person shall be prosecuted, tried, or punished for a violation of, or conspiracy to violate [various laws relating to financial institutions] . . . unless the indictment is returned or the information is filed within 10 years after the commission of the offense."); § 3294 ("No person shall be prosecuted, tried, or punished for a violation of or conspiracy to violate section 668 [regarding the theft of major artwork] unless the indictment is returned or the information is filed within 20 years after the commission of the offense."); § 3300 ("No person may be prosecuted, tried, or punished for a violation of section 2442 [regarding the recruitment or use of child soldiers] unless the indictment or the information is filed not later than 10 years after the commission of the offense.").

Where it wants to, Congress knows how to write statutes of limitations that are satisfied by the "filing" of an information. Reading "instituted" to mean "filed" would violate the fundamental canon that "[w]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).

And, of course, it is well established that "criminal limitations statutes are to be liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (internal quotation marks omitted).  This principle is grounded in the basic purpose of criminal statutes of limitations – "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie*, 397 U.S. at 114-15.  This principle should apply with particular strength in this case given that the requirement of a grand-jury indictment for felonies is protected by the Constitution and may be excused if and only if the defendant consents. If, in spite of the plain language of Rule 7, the Government is permitted to unilaterally file and then dismiss a felony information without waiver, and then charge the defendant

by indictment after the statute of limitations has expired, this would grant the Government unchecked power to extend the statute of limitations for six months or more in every criminal case. That is not and cannot be the law and would render meaningless the statute of limitations set forth in 18 U.S.C. § 3282.

The Government is simply not correct that 18 U.S.C. § 3288 authorizes its shenanigans and triggers an automatic six-month grace period after the commencement of grand jury proceedings in the Southern District of Florida to file an indictment.  As the Government noted in the appellate case, "[w]hen interpreting a statute, a court must begin with its plain language and assume Congress means what the statute says."  Gov't App. Br. at 37, citing *Richards v. United States*, 369 U.S. 1, 9 (1962).  Importantly, the sentence left off of the block quote the Government offers from 18 U.S.C. § 3288 expressly says that the six-month extension "does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution."

The relevant language to be interpreted, then, is whether there is "some other reason that would bar a new prosecution." § 3288. And there is in fact such a reason, namely that the defect leading to the dismissal of the information is "not capable of being cured." *See United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996).  Because, as this Court found, the unconsented information was a nullity, § 3288 does not apply. *See id.* "[The] underlying concept of § 3288 is that if the defendant was indicted within time, then approximately the same facts may be used for the basis of any new indictment . . . if the earlier indictment runs into legal pitfalls." *Id.* at 251 (internal quotation omitted). Here, Dr. Gatz was neither indicted nor effectively charged by information before the statute ran, and therefore pursuant to § 3288 the Government does not get an extension.

Bizarrely, in seeking to rewrite the plain language of the statute to replace the word "filed"

for the purposefully-chosen word "instituted," the Government argued on appeal that it is this Court which erred by relying on "its interpretation of the legislative history to read a new requirement" into the statute. Gov't App. Br. 29.  But this Court's Order was based on both the plain language of the rules and statutes (as discussed above) and on the legislative history, which unquestionably belies the Government's position.

As this Court found,

> [B]ecause the Information against Defendant was not accompanied by a waiver of indictment and because the Government did not subsequently obtain a waiver prior to the limitations period's expiration, the Information was not instituted for purposes of § 3282. In my view, § 3282 presupposes that an instituted information can initiate a criminal prosecution. After all, an information is a charging instrument whose primary practical purpose, aside from apprising a defendant of the charges against him, is to commence a prosecution. It would be inconsistent with the Fifth Amendment and Federal Rule of Criminal Procedure 7 to recognize an invalid charging document as a mere mechanism for extending a statute of limitations period, though the same legal instrument could not serve to initiate criminal proceedings on the charges contained therein or confer subject matter jurisdiction on the court in which those proceedings are to take place.

D.E. 19 at 12.  This Court's lengthy order carefully analyzed all the relevant statutes, rules, and constitutional provisions and reached its conclusion as to the proper statutory construction based on the language of these authorities. The Court's decision was not an abuse of discretion.[5]

To be sure, this Court *also* carefully reviewed the relevant legislative history and determined correctly that this history supports this Court's statutory interpretation.[6] This Court's extensive and

---

[5] In its Supplemental Brief before the Court, the Government specifically waived any argument that equitable tolling applied in this case and therefore this Court did not examine that issue.

[6] It is important to note that the Government does not dispute that the legislative history clearly establishes the congressional intent to extend the statute of limitations only for timely informations for which a waiver has been granted (i.e., Rule 7-compliant informations). It merely argues that reliance upon legislative history is inappropriate where the plain language is clear. In this case, the plain language is clear, but not in the way the Government asserts. The undisputed legislative history proves that point.

thorough recitation of the legislative history, set forth in pages 12 to 19 of the Order, reveals that after the predecessor of §3288 and then Rule 7 and were enacted (permitting the government to reindict after a prior indictment was found defective), Congress realized that § 3288 needed to be amended to also permit reindictment after an information was instituted in order to put a Rule 7-compliant information on the same footing as a grand jury indictment.

As the Supreme Court noted in *United States v. Durkee Famous Foods*, the amendment was passed upon recommendation of the Senate Judiciary Committee whose report stated that the purpose of the bill was set out in a letter from the Attorney General from which it quoted.  306 U.S. 68, 71 (1939). And in the very first paragraph of the report in which adoption of the legislation was recommended, a paragraph entitled "Purpose," the Judiciary stated that the purpose of the Amendment was intended only to "permit reindictment in similar cases where an information was filed *after the defendant waived in open court prosecution by indictment." Senate Report 88-1414, at 1 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3257-58 (emphasis added).

As the Report states, "[a]t the time of the enactment of the statutes from which sections 3288 and 3289 are derived, felony prosecutions could be initiated only by grand jury indictment. However, rule 7 of the Rules of Criminal Procedure for the U.S. District Courts, authorizes the prosecution of a noncapital felony by information if the defendant in open court waives prosecution by indictment." *Id.*   The intent of the amendment plainly was to allow § 3288 to permit reindictments where a Rule 7-compliant information was dismissed after the running of the statute for some other reason (in other words, to treat those informations the same as indictments). The intent was *not* to elevate the privileges to the government of charging by information over those when charging by indictment, nor to give the government the opportunity to bypass the grand jury by filing a patently ineffective unconsented information.

Recent history also confirms that the Government's position is untenable.  Early in the

coronavirus pandemic, the Department of Justice asked Congress to enact legislation that would suspend or toll statutes of limitation during emergencies. For example, a proposed 18 U.S.C. § 3302, titled "Emergency Suspension of Limitations," would have suspended the statute of limitations for all federal crimes during the period of any national emergency and for one year afterward, upon a finding by the Chief Justice "that emergency conditions will materially affect the functioning of the federal courts."

On appeal, the Government condemned this Court's conclusions regarding the significance of Congress' failure to include such a provision, stating that "[p]resumably, however, Congress decided that it was unnecessary to create additional legislation to toll the statute of limitations for federal crimes because it knew that existing law . . . held that the filing of an information tolled the statute of limitations the CARES Act." Gov't App. Br. at 35. This is clearly not the correct presumption to be drawn. The only reasonable presumption to be drawn from Congress' decision to expressly reject the Department of Justice's proposed tolling of the statute of limitations due to COVID is that Congress did not want the statute of limitations to be tolled. There was nothing remotely resembling a consensus in the law that would have caused Congress to decide such a provision would be redundant, and the idea that Congress decided against including a simple tolling passage in favor of relying upon the government to go through the information/dismissal/refile charade in every case is ridiculous. Moreover, "presumably," the Department of Justice asked for this provision precisely because it knew that existing law did *not* give it the extension it wanted, not because it already had such a right. If the government truly believed that 18 U.S.C. § 3288 saved it from the five-year statute of limitations, as it now claims in these proceedings, it would not have sought a suspension of the limitations period from Congress.

Indeed, the available information demonstrates that the choice not to include DOJ's proposed legislation was due to opposition to tolling the statute of limitations, and not on a belief that tolling

already was in place. The DOJ proposals met with significant disapproval by conservative and liberal legislators alike. Because of all the opposition, the DOJ proposal never even made it into a bill.  Yet the Government now seeks to achieve the very result Congress rejected.

### III.    DR. GATZ HAS SUFFERED UNDUE PREJUDICE FROM PROSECUTORIAL HARASSMENT.

"The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi*, 434 U.S. at n. 15; *see also United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982) ("This prosecutorial harassment involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution."); *United States v. Pitts*, 331 F.R.D. 199, 203 (D.D.C. 2019) ("[T]he D.C. Circuit described harassment as 'a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'") (internal citations omitted). D.E. 19 at 3. "In such a case the judge might rightly condition dismissal on its being with prejudice." *In re United States*, 345 F.3d 450 (7th Cir. 2003) (citing *United States v. Derr*, 726 F.2d 617, 619 (10th Cir.1984)). This is such a case, as the Government has conceded, and this Court has recognized, that it filed an information just so it could dismiss it and later recharge as an attempt to work around the statute of limitations. *See* Dissent at 7-8 ("Is there any set of facts that better fits th[e] definition [of prosecutorial harassment]?...[T]he record emphatically supports the district court's implicit finding that the government's conduct amounted to harassment, as the Supreme Court has defined that term…") (internal citations omitted).

The statute of limitations is the most important safeguard for a defendant against the prejudice inherent in delay between the alleged criminal activity and the charges. The Government's

improper tactics in this case have had serious consequences for Dr. Gatz and his family, causing them to suffer needless and irreparable harm. Aside from the fact that the allegations in this case go back ten years, the investigation has been ongoing for eight years, and the invalid information was filed three years ago, the Government waited almost six months after the Eleventh Circuit's ruling to move to dismiss the information without prejudice. Instead of moving to dismiss the invalid information immediately after the appellate court's decision, the prosecutors needlessly delayed these proceedings even further by waiting another six months to move for dismissal. These tactics fit squarely within the Supreme Court's definition of harassment.

Dr. Gatz, his wife, and his six children have been tormented with this investigation hanging over their heads for the past **_eight years_** while the Government has moved ahead with dozens of related cases throughout the country. During this period, the case has cycled through three different prosecutors. Because of the passage of time, some key witnesses have died or cannot be located. The witnesses who have been found have difficulty recalling events that occurred up to 10 years ago. Most importantly, under well-established law, Dr. Gatz has a legal right to move on with his life after the passage of the five-year statute of limitations. That is the whole point of statutes of limitations, which exist to "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." _United States v. Marion_, 404 U.S. 307, 322 (1971). We are now far beyond that limit.

For years past the statute of limitation expiration, Dr. Gatz has experienced the inevitable reputational, financial, and personal damage that this process entails. This is impermissible, "contrary to public interest," and precisely the type of "harassment" that warrants the use of the Court's discretion to dismiss the Information with prejudice. _Rinaldi_, 434 U.S. at n. 15.

Not only do the Government's tactics violate _Rinaldi_, they also depart from Justice Department policy, which is to file only legally functional charging documents; accordingly, what

the Government did demonstrates a purpose to harass. *United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991). As this Court emphasized, at oral argument the Government "agreed that ordinarily in this District . . . the prosecutor will not file an Information absent a waiver of indictment." D.E. 5. According to the official Department of Justice website, as well, "[t]he prosecuting attorney files the Information with the presiding judge or magistrate but the filing does not occur until the defendant waives prosecution by indictment pursuant to Fed. R. Crim. P. 7(b)," which did not happen here. *See* https://www.justice.gov/archives/jm/criminal-resource-manual-206-when-information-may-be-used (last visited July 17, 2023). Only with a waiver can an Information establish the district court's jurisdiction over a criminal proceeding, triggering a prosecution. *See Young v. United States*, 354 F.2d 449 (10th Cir. 1965) (cited by DOJ at https://www.justice.gov/archives/jm/criminal-resource-manual-210-waiver-procedure) (last visited July 17, 2023). The "Information" filed in this case, therefore, was substantively and legally meaningless. Thus, this Court properly found that dismissal with the purpose of recharging would serve to "harass" the defendant. *Matta*, 937 F.2d at 568. The Government's departure from official DOJ policy to gain a tactical advantage—one that implicates the Fifth Amendment and the statutory limitations period—justified a dismissal with prejudice.

## IV.  BECAUSE THE GOVERNMENT FAILED TO INDICT WITHIN 60 DAYS OF THE APPELLATE DECISION, THE SUPERSEDING INDICTMENT MUST BE DISMISSED.

Even if the Information was properly instituted back in August 2020, under 18 U.S.C. § 3288, the Government was required to return an indictment within 60 days of the date of the Eleventh Circuit's decision:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . **in the event of an appeal, within 60 days** of the date the dismissal of the indictment or information becomes final.

18 U.S.C. § 3288 (emphasis added). The result of the Eleventh Circuit's mandate on January 31, 2023, was to vacate this Court's dismissal of the information with prejudice and dismiss the information without prejudice. Even assuming the Information was properly instituted, the Government was required to indict within 60 days of the appellate decision. Because the Government indicted Dr. Gatz more than 60 days after the appellate court's ruling, the Superseding Indictment is invalid under the tolling statute and must be dismissed with prejudice.[7]

## CONCLUSION

Judge Wilson, the only Circuit Judge to address the merits, explained:

> Pandemic or not, the district court was right to root out these corner-cutting tactics. As the Supreme Court recently reminded us, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."

Appellate Opinion, dissent, at 14 (quoting *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021)).

It is undisputed that the Government did not seek a constitutionally-mandated indictment within the limitations period and did not obtain Dr. Gatz's consent to institute an Information. The onus is on prosecutors to comply with legal mandates, not the other way around. Nonetheless, with the pandemic as its excuse, the Government has engaged in an expanding pattern and practice of sidestepping these constitutional and statutory guarantees. This Court consequently found: (a) that "as a matter of law, the statute of limitations has expired;" (b) that "the Government's desired use of the statutory scheme" to toll it with a "nullity" was "unlawful;" and (c) that "[d]ismissal without prejudice would . . . be futile."  D.E. 19.

---

[7] The Government may argue that under 3288, it is entitled to either 6 months or 60 days after the information is actually dismissed without prejudice. If that argument is correct, then it was improper for the Government to file the Superseding Indictment before the information was dismissed without prejudice.  So, even under the Government's anticipated argument, the filing of the Superseding Indictment was premature and should be dismissed.

As former prosecutors explained in urging the Eleventh Circuit to uphold this Court's decision: "[T]his case is not about the exigent circumstances of a pandemic. It is about the implications that statutory interpretation during times of crisis will have in all future cases. By upholding the district court's decision, the Court will preserve and promote Congress' statutory intent and protect criminal defendants against unilateral efforts to change the fundamental rules of the criminal justice system." Exhibit A at 3. The Government's position ignores bedrock legal safeguards that protect against prosecutorial abuse. The Fifth Amendment guarantees individuals like Dr. Gatz felony indictments *by grand juries*, and Congress has determined that, after five years' time, potential defendants are *entitled to repose* from criminal prosecution. A narrow, six-month extension is available only if an information is duly "instituted" within the statute of limitations. That did not happen here, as the "Information" filed was incapable of invoking the district court's jurisdiction or initiating criminal proceedings.

As the country experiences more unpredictable challenges, the Government should not be allowed to make a practice of using a non-consensual Information as a stand-in for a timely indictment by a grand jury under the Fifth Amendment. Statutes of limitations must be liberally construed in defendants' favor regardless. *See Toussie*, 397 U.S. at 115; *see generally* Brief for Amici Curiae National Association of Criminal Defense Lawyers and the Cato Institute In Support of Appellee and Urging Affirmance (filed Apr. 4, 2021) (discussing *Toussie* and Congress's rejection of DOJ's proposed tolling legislation), attached as Exhibit B. And the Government—not Dr. Gatz—should bear the consequences of its decision not to secure a timely indictment here. The Constitution demands more—it requires an indictment returned by the grand jury within the five-year statute of limitations. Because the Government has failed through no fault of Dr. Gatz, the Superseding Indictment should be dismissed with prejudice.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:    <u>/s/ David Oscar Markus</u>
        DAVID OSCAR MARKUS
        Florida Bar Number 119318
        dmarkus@markuslaw.com

        <u>/s/ Lauren Doyle Perez</u>
        Lauren Doyle Perez
        Florida Bar Number 117687
        ldoyle@markuslaw.com