fUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-80063-CR-MIDDLEBROOK(s)

UNITED STATES OF AMERICA                )
                                        )
v.                                      )
                                        )
BART GERARD GATZ,                       )
                                        )
        Defendant.                      )
_____         )

## RESPONSE IN OPPOSITION TO BART GATZ'S
## MOTION TO DISMISS INDICTMENT

Comes now the United States, by and through the undersigned Assistant United States Attorney, and hereby responds in opposition to defendant Bart Gatz's Motion to Dismiss Indictment (DE 37). The defendant moves to dismiss the Superseding Indictment with prejudice.

For the reasons that follow, the United States submits that because the filing of the Information instituted the proceedings within the statute of limitations, the filing of the Indictment was therefore timely. The United States respectfully submits that the defendant's motion should be denied.

## I.      BACKGROUND

On August 28, 2020, while all grand juries in the Southern District of Florida were in the midst of an over eight-month suspension because of the global COVID-19 pandemic, the United States filed an information charging Gatz with two crimes (DE 3). Count One of the information charged the defendant with conspiring to pay and receive kickbacks related to a federal health care program, in violation of 18 U.S.C. § 371. Count Two of the information charged the defendant with receiving kickbacks in connection with a federal health care program, in violation of 42

U.S.C. § 1320a-7b(b)(1)(B). The statute of limitations for both counts would have otherwise expired on August 31, 2020.

In September 2020, the United States sought to dismiss the information without prejudice under Federal Rule of Criminal Procedure 48(a), because Gatz chose not to waive his right to prosecution by indictment, and planned to thereafter indict Gatz on the two counts charged in the information (DE 8). The defendant objected and filed a motion to dismiss with prejudice (DE 5), to which the government responded in opposition (DE 7). After receiving supplemental briefing (DE 10, 11) and oral argument (DE 16), this Court dismissed the information with prejudice (DE 19). The United States timely appealed that dismissal with prejudice to the Eleventh Circuit. On November 22, 2022, the Eleventh Circuit vacated the dismissal order and remanded the matter to this Court, holding that this Court made a legal error in its Rule 48(a) analysis. *United States v. B.G.G.*, 53 F.4th 1353, 1370 (11th Cir. 2022). Specifically, the Eleventh Circuit held that it was an error to fail to presume that the government's reasons for the dismissal were made in good faith and to fail to explicitly hold that the defendant had overcome that good faith presumption by making a showing that the government's reasons for the dismissal were made in bad faith. *Id.* at 1369-70. The mandate issued on January 31, 2023 (DE 27).

## II.    ARGUMENT

As the plain language of § 3282(a) and nearly all the case law makes clear, filing an information tolls the statute of limitations no matter when the defendant enters his Fed. R. Crim. P. 7(b) waiver of prosecution by indictment. This is also supported by the legislative history of 18 U.S.C. § 3282(a). Accordingly, the charges in the Information were timely and, under the 18 U.S.C. § 3288 saving clause for subsequent charging documents, the Superseding Indictment was also timely.

Moreover, even if the statute of limitations were not tolled by filing an information, because of the unpredictable eight-month Southern District of Florida grand jury suspension during the COVID-19 pandemic, the statute of limitations should be equitably tolled.

**A.      The filing of the Information properly instituted the proceedings under 18 U.S.C. § 3282.**

Under 18 U.S.C. § 3282(a), the five-year statute of limitations applicable to most federal crimes is tolled when either "the indictment is found or the information is instituted." 18 U.S.C. § 3282(a). For Counts One and Two, that five-year period expired on August 31, 2020. The Government filed the Information bringing those charges—which were identical to the charges brought later in the Indictment—on August 28, 2020.[1] Whether these charges are timely turns on whether the Information was "instituted" when the Government filed it within the limitations period or not until the defendant waives his right to prosecution by indictment as required by Fed. R. Crim. P. 7(b)—which Gatz chooses not to do. For the following reasons, the Information was "instituted" when the Government filed it on August 28, 2020, rendering the charges against Gatz timely.

**1.      The plain meaning of both § 3282(a) and Rule 7(b) show that filing an information institutes it.**

The starting point for defining "instituted" must be the statutory text. The primary canon of statutory interpretation directs that the "plain meaning" of a word controls if it is unambiguous. *Miccosukee Tribe of Indians of Fla. v. Southern Everglades Restoration All.*, 304 F.3d 1076, 1086

---

[1] Among his many critiques of the Government's decision to charge him in an information, Gatz contends that the Government "filed the Information under seal so that Dr. Gatz could not learn about it, and then waited three days until 6:33pm on the day the statute of limitations ran before it served the Information on Dr. Gatz." (DE 37 at 9.) The Government did not seal the Information so Gatz "could not learn about it" and nefariously provide it to him on the final day of the limitations period. The Government filed the Information and motion to seal on August 28, 2020 (DE 1). The court, however, did not resolve that motion and docket the Information until August 31, 2020 (DE 6 at 1). After the court docketed the Information, the Government provided it to Gatz (DE 6 at 1). The Government filed the Information under seal, not to conceal the charges, but, instead, to allow Gatz "an opportunity to formally advise the Government and the Court regarding his position on waiving Indictment before public disclosure of criminal accusations are made" (DE 1; *see also* DE 10 at 3).

(11th Cir. 2002); *see also United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013) ("The starting point for statutory interpretation purposes 'is the language of the statute itself.'" (quoting *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012)). In determining the "plain meaning" of a word, courts look to dictionary definitions while considering the word's specific context within the sentence and general context within the statutory scheme. *United States v. Zuniga-Arteaga*, 681 F.3d 1220, 1223 (11th Cir. 2012) (explaining the court will "analyze the language of the provision at issue, the specific context in which that language is used, and the broader context of the statute as a whole" to determine the meaning of a statutory term). And there is a presumption that Congress is deliberate in the words that it includes and that it omits from a statute, which informs the meaning of the included words. *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1327 (11th Cir. 2019).

Section 3282 states that the "information" must be "instituted." 18 U.S.C. § 3282(a). "Instituted" means "inaugurate[d]," "commence[d]," "start[ed]," or "introduce[d]." *Black's Law Dictionary* 800 (6th Ed. 1990); *see also Webster's New International Dictionary* (3d ed. 1993) (defining "instituted" as "caus[ing] to come into existence"). And, back in 1785—five years before Congress enacted the original version of the federal statute of limitation that included the phrase "the indictment or information for the same shall be found or instituted"—Dr. Johnson's dictionary defined "institute" as to "establish" or to "enact." Crimes Act of 1790, ch.9, § 32, 1 Stat. 112, 119; Samuel Johnson, *A Dictionary of the English Language* (6th ed. 1785) (defining "institute" as "[t]o establish; to appoint; to enact; to form and prescribe," "[t]o found; to originate and establish," and "[t]o begin; to commence; to set into operation"). Further, although in a different statutory context, the Supreme Court defined "instituted" in exactly that fashion, stating that term requires

"commencement." *Gollust v. Mendell*, 501 U.S. 115, 124 (1991). Thus, "instituted" has always meant the establishment or commencement of an item.

The object of the verb "instituted" in § 3282(a) is the noun "information," so what must be "established" or "commenced" is the "information." Because it is a legal pleading, an information comes into existence when it is filed with the courts. Thus, it is instituted when it is filed. Indeed, once filed, an information takes on its inherent powers—it institutes the formal charges against the defendant, it confers subject matter jurisdiction on the federal courts, it permits the defendant to file responsive legal pleadings, and it permits case management procedures to begin. *See, e.g.*, *United States v. Cotton*, 535 U.S. 625, 629-30 (2002); Fed. R. Crim. P. 9.

Accordingly, under that plain and unambiguous meaning of the words in § 3282(a), "the information is instituted" when it is filed with the district court. Because there is no suggestion in § 3282(a) of any further requirement, that clear statutory language can be the beginning and end of the analysis. *Conn. Nat'l Bank v. Germain*, 503 U.S. 2439, 253-54 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."); *see Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("[E]ven where there are . . . contrary indications in the statute's legislative history . . . we do not resort to legislative history to cloud a statutory text that is clear.").

And, contrary to Gatz's contentions, the plain language of Rule 7(b) supports, not detracts, from that conclusion. According to Gatz, an information cannot be "instituted" unless it can also be "prosecuted" with an accompanying waiver of indictment under Rule 7(b). But § 3282(a) and Rule 7(b) must be read separately. The text of Rule 7(b) shows that "institute" is not synonymous with "prosecute."

Rule 7(b) states that a felony "may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment." Fed. R. Crim. P. 7(b) (emphasis added). That rule does not reference the statute of limitations or when an information is "instituted"; it merely provides the mechanism a defendant must use to waive his Fifth Amendment right to indictment by a grand jury before he can be adjudicated on the charges against him. Under their plain meaning, "instituted" as used in § 3282(a) and "prosecuted" as used in Rule 7(b) are not equivalent. To "institute" is less than to "prosecute." Indeed, the verb "to institute" means to inaugurate or establish—it connotes the creation of a legal pleading—while the verb "to prosecute" means to "institute and pursue a criminal action against (a person)"—it connotes the legal document's ultimate denouement in an adjudication. *See* Institute, *Black's Law Dictionary* (11th ed. 2019); Prosecute, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

And Congress knew of Rule 7(b) when it passed § 3282(a), yet it declined to make the defendant's waiver of prosecution by indictment or the court's ability to adjudicate the information the tolling event. *See White v. Mercury Marine, Div. of Brunswick, Inv.*, 129 F.3d 1428, 1434-35 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). Instead, Congress stated that institution alone was sufficient to toll the statute of limitations, and there is nothing in § 3282(a) that suggests that the information must also be able to support a prosecution before the expiration of the limitations period. Indeed, by its very terms, Rule 7(b) presupposes the existence of an instituted information—if the case were not begun by filing the information, the court would not have jurisdiction to advise the defendant of the charges or to accept his waiver of prosecution by indictment. Thus, "Rule 7 is just a claim-processing rule" that "describes the process by which a

defendant . . . may waive the protections of [the Fifth] Amendment." *United States v. Hartwell*, 448 F.3d 707, 717 (4th Cir. 2006).

This distinction between "instituted" in § 3282(a) and "prosecuted" in Rule 7(b) makes sense when the different purposes of the statute of limitations and the procedural rule are considered. The statute of limitations is an affirmative defense that can be waived and that is concerned with the inception of the case—it ensures defendants receive timely notice of the criminal allegations so that they can marshal a defense while witnesses and evidence are still available and to encourage law enforcement to expeditiously investigate crimes. *United States v. Marion*, 404 U.S. 307, 322, n. 14 (1971) (explaining statutes of limitations "represent legislative assessments of relative interests of the State and the defendant in administering justice" and "promote justice by preventing surprises through the revival of claims that have been allowed to slumber, memories have faded, and witnesses have disappeared"); *United States v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001) ("Notice to the defendant is the central policy underlying the statute of limitations."). Both purposes are satisfied by filing an information—no matter if the defendant has waived his right to prosecution by indictment—because a filed information gives the defendant notice of the allegations against him in a formal legal pleading, guarantees against stale criminal charges and the potential loss of access to exculpatory witnesses or evidence, and ensures that law enforcement completes its investigation promptly.

Rule 7(b), on the other hand, is a claim-processing rule concerned with the conclusion of the case—its purpose is to ensure compliance with the Fifth Amendment right to prosecution by indictment by creating a procedural hurdle that a defendant must cross before he can waive that constitutional right. Tolling the statute of limitations before a defendant invokes or waives his right to prosecution by indictment does not impact this Constitutional protection. Instead, as Rule 7(b)

makes clear, a defendant cannot be adjudicated on the charges in an information—meaning he can neither plead guilty to them nor be tried upon them—until he knowingly waives his right to prosecution by indictment. He can make that waiver—or decline to make that waiver—at any time, including after the statute of limitations has expired, because it is concerned with the conclusion of the criminal proceedings, not their beginning.

The rest of § 3282(a) supports that plain meaning reading of "instituted" and "prosecuted" as different things. In determining the plain meaning of a statute, courts "must look to the particular statutory language at issue as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Accordingly, "[w]hen Congress uses different language in similar sections," the Court should give those words "different meanings." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017). In its entirety, § 3282(a) states, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (emphasis added). By using the terms "prosecuted" and "instituted" in the same sentence, Congress showed that the two verbs carry distinct meanings; "instituted" is something less than "prosecuted." To read the statute in any other way would render Congress' use of two verbs unnecessary.

The entire federal statute of limitations reflects that distinction as well. In 18 U.S.C. §§ 3288 and 3289, Congress created two saving clauses for charges brought in indictments and informations filed within the limitations period but then dismissed either after the limitations period ran (18 U.S.C. § 3288) or with less than six months remaining in the limitations period (18 U.S.C. § 3289). In both instances, Congress decided that an extra six-month limitations period would apply to the dismissed charges. *See* 18 U.S.C. §§ 3288, 3289. Importantly for instant

8

purposes, both §§ 3288 and 3289 explain that the saving clause has only two exceptions: (1) the reason for the dismissal "was the failure to *file* the indictment *or information* within the period prescribed by the applicable statute of limitations" or (2) the reason for the dismissal was "some other reason that would bar a new prosecution." *Id.* (emphasis added). Thus, the saving clauses apply to an information dismissed for "any" reason so long as it was "file[d]" within the limitations period. That verb choice in §§ 3288 and 3289—"filed"—to describe the act that rendered the indictment or information timely shows that Congress intended for the terms "instituted" and "filed" to be synonymous with respect to an information.

That Congress used the term "instituted" in § 3282(a), which was written in 1790, and the term "filed" in § 3288, which was first written using that phrase in 1948, to describe the same moment—when the statute of limitations is tolled by an information—is logical. In 1790, Congress needed to specify that an indictment tolled the statute of limitations when it is "found"—meaning grand jurors agreed the allegations written by the prosecutor were supported by probable cause—and an information tolls the statute of limitations when it is "instituted"—meaning the prosecutor signed the list of allegations—to illustrate the different paths that an indictment and an information take in drafting before they can be filed as a legal pleading. *See* Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119; *see also* Fed. R. Crim. P. 6(f); Fed. R. Crim. P. 7(a). Thus, by using "found" for indictments and "instituted" for informations, § 3282(a) made it clear that an indictment and an information still had to adhere to differing requirements for drafting to toll the statute of limitations. By the time Congress wrote § 3288 in 1948, it did not need to be concerned with specifying the different pre-filing evolution of indictments and informations, because the Federal Rules of Criminal Procedure had been enacted and delineated the different drafting requirements for indictments and informations. *See* Fed. R. Crim. P. 6 (1946). And with the Federal Rules of

Criminal Procedure laying out the differing drafting requirements, the verb "filed" could be used to cover both an indictment and an information in a single, more concise clause, because it is the final step of filing that tolls the statute of limitations for all charging documents no matter what had to occur to ready the document for that "filing" and tolls the statute of limitations.

And the rest of the Federal Rules of Criminal Procedure—specifically Rule 6(f)—also supports that plain meaning reading of "instituted" and "prosecuted" as different things. The statute of limitations is tolled when "the indictment is found." 18 U.S.C. § 3282(a). But, under Rule 6(f), a grand jury must "return" an indictment—meaning publicly docket it—before the defendant can be adjudicated. Fed. R. Crim. P. 6(f). The title of Rule 6(f) is "Indictment and Return," connoting that the establishment of an indictment—its "finding" as stated in § 3282(a)— and its "return" as required by Rule 6(f) are separate procedural moments. *See Carter v. United States*, 520 U.S. 255, 267 (2000) ("[T]he title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself."). And, like Rule 7(b) and "instituted," Rule 6(f) says nothing about when an indictment is "found." Instead, as with informations, the pivotal statute-of-limitations moment for indictments is when a prosecutor's allegations evolve into formal legal charges that can be filed with the court. The additional requirement that the indictment be returned was omitted from § 3282(a), just as the additional requirement that an information come with a waiver of prosecution by indictment was omitted from § 3282(a).

The defendant's reliance on 18 U.S.C. §§ 3293, 3294, and 3300 is misplaced. These statutes do not share the historical context of § 3282, and indeed, they are an additional reflection of the Congress's understanding that the statute of limitations is tolled by the simple act of presenting the alleged criminal violations to the court, not the subsequent prosecution of those charges.

Sections 3293 and 3294 were first enacted in 1989 and establish a ten-year limitations period in which the indictment must be "returned" or the information "filed." This simply delineates the different paths of getting an indictment or an information before the court. At least twelve grand jurors out of a quorum of sixteen must agree that the allegations written by a prosecutor are supported by a probable cause, after which the grand jury must return the indictment to a magistrate judge in open court. Fed. R. Crim. P. 6(f). But an information can simply be filed with the Clerk of Court after the allegations are written and signed by the prosecutor. Like § 3282, these statutes recognize that the statute of limitations is tolled as soon as the pleading is presented by its designated procedure to the court: the return of the indictment from the grand jury to the magistrate judge, or the filing of the information by the prosecutor with the Clerk. Sections 3293 and 3294, enacted after the Federal Rules of Procedure established these procedures, simply use the more modern language enshrined in those rules, rather than the historically derived "institute" that survives in § 3282.

Similarly, 18 U.S.C. § 3300 was first enacted in 2008 and also establishes a ten-year statute limitations period in which the indictment or information must be "filed." The conflation of these acts to the single term of "filing" simply expresses Congress's recognition that the tolling act, across all the statutes of limitations, is the filing of the pleading, not the many other acts that together form the "prosecution" of those charges.

> ### 2. The legislative history of the statutes of limitations also shows that filing an information institutes it and tolls the statute of limitations.

The legislative history further supports the Government's position. The first federal statute of limitations was enacted in 1790. *See* Crimes Act of 1790, ch. 9, § 32, 1 Stat. 112, 119. It stated, "nor shall any person be prosecuted, tried or punished for any offense, not capital, nor any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found

or instituted within two years from the time of committing the offense." *Id.* (emphasis added).

Thus, from the start, the federal statute of limitations was tolled when an information was

"instituted." A year later, in 1791, the United States ratified the Fifth Amendment, which enshrined

the individual right to be prosecuted by indictment on felony charges. *See* U.S. Const. amend. V.

So, when Congress voted on the statute of limitations, the right to prosecution by indictment did

not exist. That underscores what the text shows: an information could be instituted for felonies

simply by filing it with the court and the tolling of the statute of limitations did not turn on the

defendant's conduct.

The forward-moving legislative history of § 3282(a) further supports that interpretation.

Rule 7(b), along with the other Federal Rules of Criminal Procedure, was adopted in 1946. Fed.

R. Crim. P. 7 (1946 adoption). Since 1946, Congress has amended § 3282(a) four times. *See* Act

of June 25, 1948, ch. 645, 62 Stat. 828 (changing the limitations period from five to three years

and adding exceptions for certain crimes); Act of Sept. 1, 1954, ch. 1214, § 12(a), formerly §10(a),

68 Stat. 1145 (changing the limitations period back to five years); Act of Sept. 26, 1961, § 12(a),

75 Stat. 648 (changing the effective date of the amendment); Act of Apr. 30, 2003, § 610, 117 Stat.

692 (adding an exception for certain offenses). At every amendment, Congress knew that, under

Rule 7(b), defendants charged with felony offenses had to waive their right to prosecution by

indictment before they could be adjudicated on an information. Yet, Congress never altered,

amended, or deleted the phrase "information is instituted" in § 3282(a) to give it a deeper or

different meaning.

Indeed, when Congress last amended § 3282(a) in 2003, *see* Act of Apr. 30, 2003, § 610,

117 Stat. 692 (adding an exception to the statute of limitations for certain offenses), the Seventh

Circuit and two district courts had held that filing an information tolls the statute of limitations in

§ 3282(a) and that the defendant's waiver of prosecution by indictment is irrelevant to the statute of limitations calculus. *See United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998); *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 28 (D.D.C. 2000); *United States v. Watson*, 941 F. Supp. 601, 603 (N.D. Wa. 1996). In the face of that consistent body of common law interpreting what "instituted" means in § 3282(a), Congress again elected not to alter that statutory text. As the Supreme Court explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *White*, 129 F.3d at 1434-35 ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). As written, § 3282(a) tolls the statute of limitations when an information is filed with the court no matter if the defendant ultimately consents to be prosecuted by it.

The legislative history of § 3288 also supports this interpretation. In 1964, Congress amended § 3288 to state that the saving clause only applied to an information that was filed within the limitations period "after the defendant waives in open court prosecution by indictment." Pub. L. 88-520, § 1, 78 Stat. 699 (1964). But in 1988, Congress removed that language. A defendant is no longer required to waive prosecution by indictment in open court, and, instead, the saving clause applies if an information was dismissed "for any reason" other than its failure to be "filed" within the limitations period or another reason that would bar re-prosecution entirely. That amendment expanded § 3288 and showed that Congress, at least after 1988, did not intend a defendant's waiver of his right to prosecution by indictment to play any role in the determination of when the statute of limitations is tolled. And, of course, Congress knew of that 1988 amendment to § 3288 when it last amended § 3282(a) in 2003, yet it did not alter or amend the phrase the "information is instituted."

13

### 3.   Nearly every court to address this issue has agreed that filing an information institutes it and tolls the statute of limitations.

The Seventh Circuit—in an opinion resoundingly found to be persuasive and that has gone over 20 years without contradiction from any Circuit—was the first court to hold that an information is instituted and tolls § 3282(a) when it is filed with the court, not when the defendant waives prosecution by indictment under Rule 7(b). *United States v. Burdix-Dana*, 149 F.3d 741, 743 (7th Cir. 1998). The court explained, while Rule 7(b) requires a waiver of prosecution by indictment before the charges can be adjudicated, Rule 7(b) does not forbid the filing of an information without a waiver. *Id.* The Court reasoned "[w]e do not see how this rule affects the statute governing the limitation period. There is nothing in the statutory language of § 3282 that suggests a prosecution must be instituted before the expiration of the five year period; instead the statute states that the information must be instituted." *Id.* Thus, *Burdix-Dana* held that the text of § 3282(a) is clear that the filing of an information alone is "sufficient to institute it within the meaning of" the statute and toll the limitations period. *Id.*; *see also United States v. Thompson*, 287 F.3d 1244, 1249-50, 1253 n.4 (10th Cir. 2002) (applying *Burdix-Dana*'s logic to indictments under Rule 6(f)).

Many district courts have found *Burdix-Dana* persuasive and agreed that § 3282(a) is tolled when an information is filed with the court. *See e.g.*, United States v. Weiss, 588 F. Supp. 3d 622, 628 (E.D. Pa. 2022) (holding information is "instituted" and tolls a criminal statute of limitations when it is filed, not when the defendant formally waives his right to indictment); *United States v. Rosecan*, 528 F. Supp. 3d 1289, 1292-93 (S.D. Fla. 2021) (holding plain language of § 3282(a) is clear that an information is "instituted" when it is filed with the court); *United States v. Kruse*, No. 1:20-CR-249 (W.D. Tex. Dec. 21, 2020) (holding filing an information without a waiver of prosecution by indictment instituted the information); *United States v. Dixon*, No. 6:20-cr-00006

(W.D. Va. Oct. 26, 2020) (A "waiver of indictment need not accompany an information for it to be 'instituted' for purposes of § 3282(a)."); *United States v. Holmes*, No. 18-cr-00258, 2020 WL 6047232, *8 (N.D. Cal. Oct. 13, 2020) ("[T]he filing of an information without an accompanying waiver is sufficient to toll the statute of limitations."); *United States v. Briscoe*, No. 20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020) ("[A]n information is instituted when it is properly filed, regardless of the Defendant's waiver."); *United States v. Marifat*, No. 2:17-0189, 2018 WL 1806690, *2-3 (E.D. Cal. Apr. 18, 2018) (finding *Burdix-Dana* "instructive" before holding information "instituted" when filed with court); *United States v. Stewart*, 425 F. Supp. 2d 727, 729 (E.D.VA. 2006) ("Filing a criminal information for the purposes of instituting it to toll the statute of limitations and the defendant's right to waive indictment in open court before being prosecuted on a criminal information are two different things."); *Hsin-Yung*, 97 F. Supp. 2d at 28 ("Rule 7(b) does not prohibit the filing of an information in the absence of waiver of indictment by the defendant."); *Watson*, 941 F. Supp. at 603 (holding information is "instituted" when it is "filed with the clerk of the court").

To argue all those courts are wrong, Gatz relies heavily on an outlier district court order, *United States v. Machado*, No. 04-10232, 2005 WL 2886213 (D. Mass. Nov. 3, 2005). The reasoning of *Machado* has been repeatedly rejected for good reason. In *Machado*, the court effectively rewrote § 3282(a), defining "instituted" to include "prosecution" of a criminal action, despite the statute containing no such requirement.[2] 2005 WL 2886213, at *2. Thus, the court reasoned, because a "prosecution" includes both the "institution" of a criminal action and the

---

[2] The reasoning in *United States v. Sharma*, CRIMINAL NO. 4:14-CR-61, 2016 WL 2926365 (S.D. Tex. May 19, 2016), is similar and should likewise be rejected. There, the district court determined, with little support and on bases that are distinguished herein, that "Section 3282 must be read in harmony with Fed. R. Crim. P. 7. Pro. 7(a)(B) and (b) to permit 'informal' prosecutions." *Id.* at *2. The government's analysis herein of the plain text, legislative history, and large majority of the case law provides robust support refuting this reading.

subsequent proceedings, "institute" in § 3282(a) must require that the statute of limitations cannot be tolled until the defendant can be validly adjudicated on the charging document. *See id.* at *2.

That reasoning is unpersuasive. As outlined above, other courts have interpreted Rule 7(b)'s prohibition on "prosecution" in a narrower manner, referring only to actions after the filing of an information or indictment. *See, e.g.*, *United States v. Cooper*, 956 F.2d 960, 962 (10th Cir. 1992) ("Rule 7(b) does not prohibit the *filing* of an information in the absence of waiver of indictment by the defendant. Instead, the rule proscribes *prosecution* without waiver.").[3] And § 3282(a) requires the institution of an information, not the institution of a prosecution, to toll the statute of limitations. Thus, even if *Machado's* interpretation of the term "prosecution" is correct, Rule 7(b) would simply require that a waiver of indictment be filed with an information before the criminal action or prosecution could be "instituted," not before the information could be "instituted."

Gatz's reliance on various Supreme Court cases is also misplaced. In *Jaben v. United States*, 381 U.S. 214 (1965), the Supreme Court interpreted the statute of limitations governing tax evasion, which provided "[w]here a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States." *Id.* at 215-16. The Supreme Court found "the complaint to initiate the time extension . . . must satisfy the probable cause requirement of Rule 4," *id.* at 220-21, which provided "[i]f it appears from the

---

[3] Gatz notes that the *Cooper* court noted that the "clear language of the statute of limitations prohibits the government from prosecuting beyond that time" (DE 37 at 13). This is entirely consistent with the Government's position—the filing of the information tolls the statute of limitations, but Rule 7(b) requires a waiver of indictment to continue the prosecution on that instrument. Importantly, the *Cooper* court further stated, "Therefore, the information could have been filed within the period of limitations, thus providing a valid basis for the prosecution." *Cooper*, 956 F.2d at 962-63.

complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant from the arrest of the defendant shall issue," *id.* at 217 n.1.

That holding does not mandate, in this separate statutory context, the word "institute" means adequate to prosecute, because *Jaben* addressed a materially different statute that involved a complaint. A complaint and an information have a critical difference, which was central to *Jaben*'s reasoning, because, under the then-applicable version of Rule 3, a complaint must have been "made upon oath before a commissioner or other officers empowered to commit persons charged with offenses against the United States." *Jaben*, 381 U.S. at 217. That statute of limitations also specified the complaint must be "instituted before a commissioner of the United States within the period above limited." Because "the Commissioner's basic functions under the Rules are to make judgment that probable cause exists and to warn defendants of their rights," *Jaben* explained probable cause must be required for a complaint to be "instituted"; otherwise the commissioner's role would be a nullity. *Id.* at 218. By contrast, there are no analogous requirements for filing an information, and § 3282 states only that an information must be "instituted." Thus, *Jaben* does not inform the analysis regarding § 3282. *See Burdix-Dana*, 149 F.3d at 742 n.1 ("The considerations that led the Court to its conclusion in *Jaben* were specific to the statute under review, and therefore the case is distinguishable.").

Similarly, *Smith v. United States*, 360 U.S. 1 (1959), does not stand for the proposition that, until the defendant waives prosecution by indictment, "the Government lacked authority to file the information and to confer power on the Court to proceed on the charges" (DE 37 at 12). *Smith* held only that the government could not charge a defendant with violating the Kidnapping Act in an information, because that crime was punishable by death and the version of Rule 7 in place at that time stated capital offenses had to be charged by indictment. 360 U.S. at 6-8. *Smith* rejected the

idea that, by filing an information, the capital element was implicitly eliminated, and the crime

could be prosecuted on an information. *Id.*

> **4.      Any implications that Gatz seeks to divine from Congress' decision not to adopt legislation tolling the statute of limitations during the COVID-19 pandemic are of no moment.**

Gatz further argues that Congress's failure to enact legislation—and the Department of

Justice's proposals for and support of the legislation—demonstrates that "Congress did not want

the statute of limitations to be tolled." (DE 37 at 21.) The defendant is correct that in passing the

pandemic-related CARES Act in April 2020, Congress did not adopt the Department of Justice's

proposed language tolling the statute of limitations for federal criminal prosecutions in light of the

COVID-19 pandemic. But nothing in that Act, or its legislative history, touched on the meaning

of § 3282(a) or the use of an information to charge defendants during the pandemic. In addition,

when that legislation was passed, there was a consensus among courts that filing an information

tolls the statute of limitations—the only clear outlier was *Machado*—thus rendering a statutory

tolling of the statute of limitations an unnecessary remedy to cure any consequences of the decision

made by some federal districts to suspend grand juries. *See Cannon v. University of Chicago*, 441

U.S. 677, 696-97 (1979) (quoting the maxim that courts "assume that Congress is aware of existing

law when it passes legislation").

> **5.      Venue**

Gatz's contention that the Government could have indicted him in a different district where

grand juries were sitting is a non-starter. Gatz's receipt of the kickbacks occurred here in the

Southern District of Florida. The defendant argues that other players who engaged in criminal

conduct with Insys were indicted throughout the country, and surely venue would lie in one of

those districts. But as the Government noted at the oral argument in this matter, like here, those

other healthcare practitioners were prosecuted in the place where they actually practiced. (DE 22 at 30.)

Further, as a practical matter, moving venue would have been complicated, if not impossible, given the ever-changing travel bans, quarantine requirements, and other safety measures needed to protect the public health during the COVID-19 pandemic.

Thus, the Information was "instituted" before the statute of limitations expired, rendering the charges timely.

**B.      Because the United States obtained an indictment within six months of dismissal, the matter may continue under 18 U.S.C. § 3288.**

Because the charges in the Information were timely under § 3282(a), the identical charges in the Indictment were also timely. Under § 3288, there is a six-month grace period for re-filing an information or indictment that has been dismissed for any reason after the statute of limitations has expired. Specifically,

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, . . . [4]or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations.

---

[4] The text removed from this quotation provides, "in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final." 18 U.S.C. § 3288. Gatz relies on this to argue that the indictment was untimely. (DE 37 at 24-25.) But that provision only applies if the result of the appeal is that the charging document is dismissed. Here, the result of the Eleventh Circuit's mandate is that the charging document was reinstated and remained pending. Because the Information had instituted the proceedings when it was filed, for the reasons cited herein, it tolled the statute of limitations on the date it was filed. Here, because the Information has not been dismissed, the Indictment is timely under 18 U.S.C. § 3288.

To the extent Gatz argues that the Information should have been dismissed before the Indictment was returned (DE 37 at 25 n.7), this is the procedure that has been followed in multiple other cases, including in *Burdix-Dana* and in recent cases in this district. Even if it were error to have proceeded in this way, it is harmless.

18 U.S.C. § 3288 (emphasis added). This provision applies unless "the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." *Id.*

Section 3288 applies when an underlying information is dismissed in response to a defendant's assertion of his right to prosecution by indictment, because the statute applies to dismissal "for any reason after the period prescribed by the applicable statute of limitations has expired[.]" 18 U.S.C. § 3288 (emphasis added). Accordingly, § 3288 applies to an "information that was a nullity because only an indictment would suffice[.]" *United States v. Macklin*, 535 F.2d 191, 193 (2d Cir. 1976). Indeed, in 1964 Congress amended § 3288 to "permit re-prosecution by indictment of a defendant whose conviction had been vacated even when the court had been without jurisdiction to proceed under the original information." *Macklin*, 535 F.2d at 193; *see also United States v. Charnay*, 537 F.2d 341, 355 (9th Cir. 1976) ("[A] second indictment may properly be returned within the prescribed six-months period where the dismissal of the first indictment is due to a legal defect."). Section 3288's capacious language encompasses the reason animating the Government's dismissal of the Information under Rule 48(a)—its non-compliance with Rule 7(b).

The only exception in the text of § 3288 is where the original charging document was dismissed for "failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution." 18 U.S.C. § 3288. The government filed the Information within the five-year limitations period and a dismissal resulting from non-compliance with Rule 7(b) is not a dismissal that would bar a new prosecution. Indeed, the "very purpose for which § 3288 was enacted" was to allow "a second indictment to remedy legal deficiencies present in the first[.]" *United States v. Clawson*, 104 F.3d 250, 252 (9th Cir. 1996); *see also United States v. Italiano*, (11th Cir. 1990) ("We agree with other

courts of appeals that have addressed the issue that § 3288 is available to correct legal defects as well as grand jury defects or irregularities."). Thus, § 3288 and its six-month extension apply when the Government moves to dismiss the information for failure to comply with Rule 7(b). *Burdix-Dana*, 149 F.3d at 743.

Here, the Eleventh Circuit "vacate[d] the dismissal order and remand[ed] to the district court for further proceedings consistent with this opinion." (DE 27 at 36.) The effect of the mandate, which issued on January 31, 2023, was simply to reinstate the Information, and it has remained pending. Notably, the Eleventh Circuit did not, as Gatz contends, "dismiss the information without prejudice." (DE 37 at 25.) Once the mandate issued and the Information was reinstated after a two-year pause in the district court proceedings, the Government had to confirm the availability of witnesses necessary to try this case and confirm that Gatz still wished to invoke his right to prosecution by indictment. Because Gatz has again declined to waive his right to prosecution by information, and the Government has prepared the charges for indictment, the Government now again seeks to dismiss the Information without prejudice (*see* DE 32) so that Gatz can be prosecuted by his preferred method—an indictment returned by a grand jury.

Here, because the Information remained pending, the grand jury has timely returned the Superseding Indictment under 18 U.S.C. § 3288.

### C.    Equitable tolling should apply in this case.

This Court should also apply equitable tolling principle to extending the statute of limitations in this matter. The defendant asserts that the United States "specifically waived any argument that equitable tolling applied in this case" (DE 37 at 19 n.5). To the extent that the United

States previously waived any argument as to equitable tolling, the United States withdraws that waiver.[5]

"Equitable tolling" is a doctrine under which a party may bring an action after the statute of limitations has expired if they were prevented from bringing the action because of inequitable circumstances. *See Bailey v. Glover*, 88 U.S. 342 (1874) (explaining when a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered . . ."); *Osternek v. E.T. Barwick Indus.*, 825 F.2d 1521, 1535 (11th Cir. 1987). Under this doctrine, a court has the authority to toll the statute of limitations until the court determines it would have been fair for the statute of limitations to cease running on the claims. *See Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir. 1993).

Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. *Homlberg v. Albrecht*, 327 U.S. 392, 395-96 (1946); *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95 (1990) (applying equitable tolling to waivers of sovereign immunity). Indeed, as the Supreme Court stated, "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling[.]" *Young v. United States*, 535 U.S. 43, 50 (2002); accord United States v. Locke, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defense[] of . . . equitable tolling."). That determination follows the "normal rule of statutory construction . . . that even if Congress intends for legislation to change the interpretation of a

---

[5] As a general matter, a party that validly waives some right or privilege can withdraw that waiver later. *Cf. Stevens v. Marks*, 383 U.S. 234, 244 (1966) (case in which a witness waived his immunity before appearing before a grand jury, only to later withdraw the waiver and refuse to testify based on his immunity).

There is nothing inequitable about allowing the Government to raise this argument. It does not prejudice the defendant because he will have the opportunity to reply to this argument and address it at any forthcoming hearing. Nor can the defendant claim to have relied on the Government's waiver to his detriment since, even when the United States did not argue equitable tolling, the Government was still pursuing the criminal charges against him on the Government's alternative § 3288 statutory argument.

judicially created concept, it makes that intent specific." *Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986). Equitable tolling therefore applies to criminal statutes of limitations, including § 3282(a).

Although equitable tolling is more commonly applied to civil cases, "there is no reason to distinguish between the rights protected by criminal and civil statutes of limitations." *Powers v. Soutland Corp.*, 4 F.3d 223, 233 (3d Cir. 1993); *see also United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) ("[C]riminal statutes of limitations are subject to tolling . . . [which] may be appropriate if . . . the plaintiff has 'in some extraordinary way' been prevented from asserting his rights."); *United States v. Levine*, 658 F.2d 113, 120 (3d Cir. 1981) ("Statutes of limitations further reflect an underlying legislative balance insofar as different crimes carry different time periods, and the statutes are subject to tolling, suspension and waiver."). And criminal limitations period serve the same purposes as their civil counterparts: repose, preventing staleness in evidence, and encouraging the prompt initiation of litigation—none of which conflict with equitable-tolling principles. *See Marion*, 404 U.S. at 322 n.14 (noting the policies behind civil and criminal statutes of limitations are similar). Accordingly, equitable tolling has been applied to time limits in criminal cases. *See, e.g.*, *Fallen v. United States*, 378 U.S. 139, 144 (1964) (equitably tolling time limit for filing a notice of appeal); *Grant v. Swarthout*, 862 F.3d 914, 923 (9th Cir. 2017) (equitably tolling the time limit for filing a habeas corpus petition); *United States v. Terlingo*, 327 F.3d 216, 222 (3d Cir. 2003) (equitably tolling the time limit in which the Government can seek criminal restitution).

Moreover, although "criminal limitation statutes are to be liberally interpreted in favor of repose," *Toussie v. United States*, 397 U.S. 112, 115 (1970), the Supreme Court has also recognized that time limits "sought to be applied to bar rights of the Government[] must receive a strict construction in favor of the Government," *Badaracco v. Commissioner*, 464 U.S. 386, 391

(1984). Thus, the Supreme Court will not "in expounding a statute, give to it a construction which would in any degree disarm the government of a power which has been confided to it to be used for the general good—or which would enable individuals to embarrass it, in the discharge of the high duties it owes to the community—unless plain and express words indicated that such was the intention of the Legislature." *Brown v. Duchesne*, 60 U.S. 183, 195 (1856).

Equitable tolling should apply here to extend the statute of limitations in the wake of a years-long global pandemic. The Government had no way to foresee that a pandemic would suspend grand juries or that the Southern District of Florida would issue monthly extensions of the grand jury suspension, taking up a significant five-month portion of the limitations period and making it impossible to indict this case during that period. The statute of limitations on Gatz's charges expired on August 31, 2020, but grand juries in the Southern District of Florida did not reconvene until November 17, 2020.[6] Applying equitable tolling here is particularly justified because the Government filed a charging document before the statutory period expired to give Gatz notice of the criminal allegations against him.

D. **The United States has continued to act in good faith**

Finally, the defendant argues that he has suffered undue prejudice in this matter. But the Government has continued to act in good faith. It instituted the Information based on its evaluation of the public interest, reading of §3282(a), adherence to the majority view of the law, and interest in ensuring Gatz had timely notice of the charges while grand juries were suspended. The Government did not create the COVID-19 pandemic, did not suspend grand jury proceedings indefinitely, and was not seeking more time to bring its case against Gatz. To the contrary, the Government filed the Information because it was the only charging document available during the

---

[6] Of course, at the time the grand juries reconvened in this District, the dismissal of the Information with or without prejudice was under consideration by this Court.

final five months of the limitations period in the jurisdiction where Gatz resided and most of his offense conduct occurred. "[T]he delay in this matter is attributable to the COVID-19 pandemic, not to any deliberate tactical maneuvering" and "[t]he suspension of [grand jury] proceedings, though necessary to safeguard the public health, is equally detrimental to the Government and the Defendant." *United States v. Briscoe*, 2020 WL 5076053, *3 (D. Md. Aug. 26, 2020). The Government was not attempting to prosecute Gatz in a way more favorable to it; the Government was attempting to prosecute Gatz in the only way possible during a pandemic.

To the extent the defendant criticizes the United States for even approaching the statutory period, the Eleventh Circuit has been clear that "[t]he government has no constitutional duty to indict as soon as the prosecutor has probable cause to believe that the defendant is guilty." *United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989); *see United States v. Giannattasio*, 979 F.3d 98, 100 (7th Cir. 1992) ("[A] judge in our system does not have authority to tell prosecutors which crimes to prosecute or when to prosecute them."); *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.").

## III.    CONCLUSION

The United States properly filed the Information in this matter before the expiration of the statute of limitations. After the Eleventh Circuit vacated the prior order of dismissal, that Information was reinstated, and the return of the Superseding Indictment was timely. This is not only supported by the plain language and legislative history of the applicable statutes, but also by the majority of the case law reviewing those statutes and principles of equitable tolling. Finally, the United States has continued to act in good faith at all times in this matter.

For the foregoing reasons, the United States respectfully requests that this Court deny Bart Gatz's Motion to Dismiss Indictment (DE 37).

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    <u>/s/ Alexandra Chase</u>
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5501746
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1011
Fax: (561) 659-4526
alexandra.chase@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 18, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

<u>/s/ Alexandra Chase</u>
ALEXANDRA CHASE
Assistant United States Attorney