UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

vs.                                CASE NO. 20-80063-MIDDLEBROOKS(s)

BART GERARD GATZ.
_____/

**REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

Bart Gatz, through counsel, respectfully files this Reply in Support of his Motion to Dismiss the Superseding Indictment (D.E. 37), and states as follows:

**I.     BECAUSE THE GOVERNMENT'S RESPONSE PEDDLES THE SAME ARGUMENTS THAT THIS COURT ALREADY HAS REJECTED, THE INDICTMENT SHOULD BE DISMISSED.**

Other than one argument related to equitable tolling, the Government's response to Dr. Gatz's Motion to Dismiss offers no new arguments for this Court to consider. In essence, the Government's response is a motion to reconsider, which offers no legitimate reasons for reconsidering. This Court authored a thoughtful Order on these issues, which meticulously analyzed the statutes, their legislative history, case law, and policy. And while the majority in *B.G.G.* did not address the merits of the case, the only Eleventh Circuit Judge to consider the merits of this issue agreed with this Court. Judge Wilson Dissent at 1. The Eleventh Circuit made clear that this Court could dismiss after the Government actually indicted. Opinion at 33 ("If the grand jury later indicts B.G.G., he can still raise a statute of limitations

defense."). In an attempt to avoid this result, the Government simply regurgitates its previously rejected arguments. We will list them here and briefly refute them:

**The Government argues, *"The plain meaning of both § 3282(a) and Rule 7(b) show that filing an information institutes it."* D.E. 42 at 3.**

The Government may have *filed* an information against Dr. Gatz on August 28, 2020, but it did not *institute* one. In order for a charging instrument to be "instituted," it must not only be filed but must be actually effective to commence a federal criminal case, which in the case of a felony charge means it must be accompanied by a waiver of indictment. Because the Government did not have a waiver of indictment from Dr. Gatz, the information it filed was never instituted. And Dr. Gatz was not indicted by a grand jury in the five-year period following his last alleged criminal act (August 31, 2015). D.E. 3. Accordingly, the only way his prosecution can go forward is if an information was "instituted" before August 31, 2020. It was not, and as a result the statute of limitations against Dr. Gatz has run.

This Court already has directly rejected the Government's position that "filing an information institutes it" and found:

> I conclude that the August 28, 2020 Information was not "instituted" within the meaning of 18 U.S.C. § 3282, dismissing the Information without prejudice now, as the Government requests, would allow for an end-run around the statute of limitations and contravene the Fifth Amendment's guarantee of a defendant's right to be prosecuted by way of grand jury indictment.

D.E. 19 at 6. This Court's reasoning still applies and the Government's position should be rejected again. And if the Court has any doubt on this or the other points raised herein, that doubt should cut in the Dr. Gatz' favor. *See, e.g., United States v.*

*Gilbert*, 126 F.3d 1451 (11th Cir. 1998) ("When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant.") (*quoting United States v. Habig*, 390 U.S. 222, 226-27 (1968)).

> **The Government contends, *"The legislative history of the statutes of limitations also shows that filing an information institutes it and tolls the statute of limitations."* D.E. 42 at 11.**

This Court carefully examined the legislative history of the relevant statutes for six pages of its 20-page order. D.E. 19 at 12-18. Again, the Court rejected the Government's arguments and concluded:

> The legislative history of § 3288 indicates that although the statute permits tolling of the limitations period specifically for felonies, Congress did not intend to create a means to bypass the statute of limitations altogether by filing a defective information.

D.E. 19 at 18. Because the Government offers no new information on this point, this Court's detailed and lengthy analysis of the relevant legislative history should remain unchanged.

> **The Government asserts, again, that *"[n]early every court to address this issue has agreed that filing an information institutes it and tolls the statute of limitations."* D.E. 42 at 14.**

It is simply not true that "nearly every court" has ruled the other way. There is no binding case in the Eleventh Circuit, and the district courts are split. Since this Court's ruling here, it also issued an order rejecting the Government's position in *United States v. Xavier*, Case No. 20-80054-CR-Middlebrooks (S.D. Fla. Sept. 8, 2021). And in another case, Chief Magistrate Judge Torres reversed his position and agreed with this Court that the Government's procedures would not toll the statute of

limitations. *United States v. De La Torre*, 20-20182-Cr-Williams/Torres (Doc. 71) (S.D. Fla. Oct. 21, 2022) (finding that "the Government's filing of something other than a Grand Jury indictment" is not sufficient "to satisfy the relevant statutes of limitations absent the consent of the accused").

Instead, the Government's primary case is the old, non-binding case, *United States v. Burdix-Dana,* 149 F.3d 741 (7th Cir. 1998). But this Court quoted from a case that parted ways with *Burdix* finding, "[i]t defies logic and reason that the court may accept an information without waiver for the purpose of applying the statute of limitations, when the same document is 'meaningless' for purposes of subject matter jurisdiction and prosecution." *United States v. Machado*, No. CRIM.A.04-10232-RWZ, 2005 WL 2886213 at *2 (D. Mass. Nov. 3, 2005). Accordingly, this Court rightfully rejected the flawed reasoning in *Burdix* and held:

> Having examined the sparse case law on this issue, and after studying the legislative history of the relevant statutes, I decline to conclude that the unconsented Information in this case was "instituted" within the meaning of § 3282 when the Government filed it with the Clerk of Court. To hold otherwise would allow the Government's requested dismissal without prejudice to toll the already-expired, five-year statute of limitations period even though the same Information is invalid for purposes of prosecution.

D.E. 19 at 12. Just because the Government has employed the same illegal maneuver—filing an invalid, non-consensual information to toll the statute of limitations—in the cases it cites, does not mean that this Court must adopt their reasoning. As this Court found in *Xavier*, "under the particular facts of [Dr. Gatz's]

case, the Government's use of the statutory scheme was an improper effort to circumvent the limitations period."

> **The Government asserts,** *"Any implications that Gatz seeks to divine from Congress' decision not to adopt legislation tolling the statute of limitations during the COVID-19 pandemic are of no moment."* D.E. 42 at 18.

While the Government says that we are trying to divine Congressional intent, it is actually this Court which already has addressed this issue. Early in the coronavirus pandemic, the Department of Justice asked Congress to enact legislation that would suspend or toll statutes of limitation during emergencies. But a bipartisan Congress quickly and definitively rejected DOJ's request, expressly declining to extend the statute of limitations. This Court correctly interpreted Congress' decision not to adopt tolling legislation during the pandemic in holding:

> Allowing the applicability of our constitutional norms to ebb and flow with the times is not becoming of a democracy under the rule of law. Indeed, if our laws are to carry any force, they must stand despite the trials and tribulations of society. Congress may certainly make exceptions; however, it has not done so here. In fact, in March of 2020 when the Department of Justice asked it to suspend criminal statutes of limitations during the coronavirus pandemic and for one year thereafter, Congress declined to make such a special dispensation.

D.E. 19 at 19.

On appeal, the Government condemned this Court's conclusions regarding the significance of Congress' failure to include such a provision, stating that "[p]resumably, however, Congress decided that it was unnecessary to create additional legislation to toll the statute of limitations for federal crimes because it knew that existing law…held that the filing of an information tolled the statute of

limitations the CARES Act." Gov't App. Br. at 35. And the Government is still pushing this absurd assertion. The only reasonable presumption to be drawn from Congress' decision to expressly reject the Department of Justice's proposed tolling of the statute of limitations due to COVID is that Congress did not want the statute of limitations to be tolled.

There was nothing remotely resembling a consensus in the law that would have caused Congress to decide such a provision would be redundant, and the idea that Congress decided against including a simple tolling passage in favor of relying upon the Government to go through the information/dismissal/refile charade in every case is ridiculous. Moreover, "presumably," the Department of Justice asked for this provision precisely because it knew that existing law did *not* give it the extension it wanted, not because it already had such a right. If the Government truly believed that 18 U.S.C. § 3288 saved it from the 5-year statute of limitations, as it now claims, it would not have sought a suspension of the limitations period from Congress.

The Government also ignores the withering condemnation from across the political spectrum that greeted DOJ's proposed legislation. Senator Mike Lee (Republican – Utah) tweeted, "OVER MY DEAD BODY." Senate Minority Leader Chuck Schumer (Democrat – NY) tweeted, "Two Words: Hell No." Representative Alexandria Ocasio-Cortez (Democrat – NY) tweeted, "Absolutely not," and Doug Stafford, chief strategist for Senator Rand Paul (Republican – KY), agreed. Representatives Justin Amash (Independent – MICH) and Earl Blumenauer (Democrat – ORE) likewise condemned the DOJ proposal. These emphatic bipartisan

reactions hardly suggest that Congress thought existing law already provided the Government with the relief sought. Instead, they suggest that legislators thought the DOJ was exploiting the pandemic to infringe upon the vital protections that criminal statutes of limitations afford.

**The Government argues, *"The United States has continued to act in good faith."* D.E. 42 at 24.**

The Court need not engage on this point as the good faith of the Government really only mattered in the previous procedural posture about whether to dismiss the information with or without prejudice. That standard does not exist with a violation of the statute of limitations. If the indictment was not timely filed, the Government's good intentions do not matter. *See, e.g., United States v. Gilbert*, 126 F.3d 1451 (11th Cir. 1998) (holding that district court should have dismissed indictment where government violated statute of limitations without regard to whether government acted in good or bad faith).

In any event, when this Court found that the Government's use of Rule 48(a) to achieve "a tactical advantage" was "inconsistent with honoring [Dr. Gatz's] rights," it was quoting the definition of bad faith in this context. D.E. 19 at 7; *see also United States v. Dyal*, 868 F.2d 424, 429 (11th Cir. 1989) (defining bad faith as seeking dismissal "to achieve a tactical advantage in derogation of the defendant's rights or for the purpose of harassment"). As recognized by Judge Wilson on appeal, this Court's order "fairly read, implicitly found bad faith, and that implied finding was consistent with the court's judgment… [T]he record supports the conclusion that the

government's purpose was to harass [Dr. Gatz], thus overcoming the presumption of bad faith and justifying dismissal with prejudice." Dissent at 6-7.

While acknowledging the Government's assertion that it "acted in good faith in seeking to charge [Dr. Gatz] and subsequently dismiss such charges," this Court emphasized that it "disagree[d] with the Government's implicit characterization of its motivations." D.E. 19 at 6.

> [T]he Government's desired course of conduct at least arguably falls within the definition of "prosecutorial harassment" in that it seeks to "charg[e], dismiss[], and recharg[e]," *Rinaldi*, 434 U.S. at 29 n.15, "at a different time or place deemed more favorable to the prosecution." *Salinas*, 693 F.2d at 351. Indeed, by its own admission, the Government's sole motivation behind filing the Information was to "preserve the ability to proceed with criminal charges against the [D]efendant" in the future. (DE 10 at 6).

*Id.* In lauding this Court's reasoning, Judge Wilson explained:

> When the defendant demonstrates that the initial dismissal was in bad faith and for the purpose of harassment, the government is not entitled to dismissal without prejudice. That is what happened here. The government's purpose, plain and simple, was "to achieve a tactical advantage in derogation of [Dr. Gatz's] rights." So, by definition, the government acted in bad faith. Moreover, the government's plan to "charg[e], dismiss[ ], and recharg[e] [Dr. Gatz]…over [his] objection" is exactly what the Supreme Court has labeled harassing conduct. The district court thus correctly dismissed the information with prejudice.

Dissent at 3 (internal citations omitted).

The Court's thoughtful order in this case recognized the danger in the Government's position: the Government could use these improper tactics to extend the statute of limitations in every case (not just during a crisis) by six months, something the plain language of the statute and the legislative history clearly did not

allow or intend. The Government does not offer this Court any new basis to change its well-reasoned and thorough ruling on these issues. Accordingly, this Court's previous ruling, now law of the case, still applies and the case should be dismissed.

## II. IF THE GOVERNMENT'S THEORY THAT THE INFORMATION WAS REINSTATED BY THE APPELLATE DECISION IS CORRECT, 18 U.S.C. § 3288 IS NOT APPLICABLE.

The Government erroneously argues that it can file under § 3288 within six months of dismissal of an information. D.E. 42 at 19-20. We explain in our Motion to Dismiss why this is incorrect and why the Government only had 60 days to file an indictment under the statute. If the Eleventh Circuit's opinion effectively acted as a dismissal, then the Government waited too long to indict since it did not do so within 60 days. If the opinion did not act as a dismissal (as the Government says, D.E. 42 at 21), then the Government could not have indicted Dr. Gatz until after the Information was dismissed, per § 3282(a) (explaining that a "new indictment may be returned" only after an "information charging a felony is dismissed"). This is why the Government subsequently moved to dismiss the Information without prejudice. We explaining in our Response, D.E. 43, why the "Superseding Information" was the active charging document now and that the Government's motion should be denied as moot.

The Government realizing it has a problem, now says that any error it committed with this procedure "is harmless." D.E. 42 at 19, n. 4. This argument is untenable as there is no harmless exception to following the procedures dictated by

the relevant statute. The tolling provision in the statute explicitly applies to a charging instrument that has been dismissed. Under the Government's theory, there is no charging instrument in this case that has been dismissed. Consequently, the tolling statute does not apply, and the Superseding Indictment was improperly filed.

### III. THE GOVERNMENT SPECIFICALLY WAIVED THE EQUITABLE TOLLING ARGUMENT AND IN ANY EVENT, IT DOES NOT APPLY TO THIS CASE.

Realizing it is going to lose again on the merits, the Government argues—for the first time in three years of litigation on this issue—that equitable tolling should be applied in this case. However, the Government specifically waived any equitable tolling argument both in its Supplemental Brief before this Court, and at the oral argument before this Court. This Court recognized the Government's position: "Of note, at oral argument, the Government stated that it does not seek to toll the statute of limitations in this case by any means (e.g., equitable tolling) other than 18 U.S.C. § 3288." D.E. 19 at 19. The Government itself conceded on appeal that it did not raise this argument before this Court: "The Government did not raise any equitable tolling or other statute-of-limitation doctrines before the district court." Gov't App. Br. at 39.

The Government has therefore waived any argument based on equitable tolling, and taking the position that it can withdraw that waiver after three years of litigation, multiple rounds of briefing, and oral arguments before two courts smacks of desperation. The Government does not cite to any similar cases that would authorize it to withdraw its waiver of an equitable tolling argument. The only case the Government cites in support of this position is easily distinguishable and deals

with a waiver of immunity from prosecution that a police lieutenant signed when he appeared before grand jury. *Stevens v. Marks*, 383 U.S. 234 (1966). In that case, because the waiver of immunity was invalid and had been effectively withdrawn, the Court found that his Fifth Amendment claim of privilege against self-incrimination was available to him. *Id.* at 243. The right to withdraw an invalid waiver of a defendant's constitutional rights cannot reasonably be compared to the Government's tactics in the case at hand. No case or statute permits the Government to withdraw its waiver after three years of litigation. The Government should not have the ability to cherry-pick alternative tolling theories at various points in the litigation when it suits them.

Even if the Court were to find that the Government could withdraw its waiver of the equitable tolling argument, the doctrine still should not apply in this case. "Equitable tolling" is a doctrine under which a party may bring an action after the statute of limitations has expired if they were prevented from bringing the action because of inequitable circumstances. The Government cites to civil cases to explain "inequitable circumstances" that trigger this doctrine, but none of those circumstances apply here. For example, in *Bailey v. Glover*, 88 U.S. 342 (1874), the Court found that when a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." Here, there was no fraud or fault on the part of Dr. Gatz to prevent the Government from bringing charges. It was the Government's own lack of "diligence" that caused the delay in

filing charges after a five-year investigation. Plus, the Government has never explained why it did not charge Dr. Gatz via indictment in a district that had venue and active grand juries as it did with many of the other INSYS doctors. B.G.G. App. Br. at 3-4, n. 1.

The Government concedes that equitable tolling "is more commonly applied to civil cases," but attempts to argue that "criminal limitations serve the same purposes as their civil counterparts." D.E. 42 at 23. The Government cites to *United States v. Marion*, 404 U.S. 307, 322, n. 14 (1971) to support this proposition. But *Marion* does not hold that criminal limitations serve the "same" purpose as limitations in civil cases. In a footnote, the Court begins by emphasizing that "criminal statutes of limitation are to be liberally interpreted in favor of repose" and then notes that the "policies behind civil statutes of limitation are **in many ways similar**." *Id.* (emphasis added). This Court recognized the importance of the limitations periods in criminal cases:

> Allowing such tactics, wherein the Government seeks dismissal of the Information solely to safeguard its ability to charge Defendant at a later date, would not serve the strong public interest of upholding statutory and constitutional protections. The Government's proposed action would also have the effect of eroding the fundamental purpose of statutes of limitations—"to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 115 (1970). A criminal statute of limitations could not serve its purpose if the prosecution could just extend the limitations period whenever so doing served its ends by filing a charging instrument that was not viable for prosecution.

D.E. 19 at 6.

The equitable tolling doctrine should be invoked "only sparingly" and "under very narrow circumstances" in criminal cases. *United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005) (citations omitted) ("This court has never applied equitable tolling to rescue a Government indictment filed after the statute of limitations has lapsed, and we see no convincing rationale to do so here."). "Absent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the 'rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice.'" *Id.* (citations omitted); *see also United States v. Midgley*, 142 F.3d 174, 180 (3d Cir.1998) ("Ultimately, the clear and unambiguous rule afforded by the criminal statute of limitations is preferable to a shifting standard based on the perceived equity of the [the particular case].").

The handful of criminal cases that applied equitable tolling that the Government cites to have no bearing on the issues in this case: (1) all of the Government's cases deal with extending time limits for post-conviction proceedings, not filing charges within the applicable statute of limitations; and (2) the delays in those cases were caused by circumstances completely out of the filing-party's hands. *See Fallen v. United States*, 378 U.S. 139, 144 (1964) (time limit extended for filing notice of appeal when an in-custody defendant did all that could reasonably be expected to get the notice of appeal letter to the clerk's office within the ten-day period); *Grant v. Swarthout*, 862 F.3d 914, 923 (9th Cir. 2017) (prison officials' delay in providing petitioner with requested certificate for in forma pauperis filing was extraordinary circumstance, justifying equitable tolling); *United States v. Terlingo*,

327 F.3d 216, 222 (3d Cir. 2003) (equitably tolling the time limit in which the Government can seek criminal restitution when defendants were, in significant part, the cause of the delay).

Equitable tolling is available only in the rarest of circumstances that are beyond a party's control and are unavoidable even with diligence. *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 2005). Here, with the pandemic as its excuse, the Government claims that after five years of investigation, the suspension of grand juries for a few months at the end of the limitations period prevented it from filing charges. But the situation the Government finds itself in here is entirely one of its own making. As this Court knows, the Government improperly delayed bringing this prosecution in that, prior to the pandemic-induced suspension of grand jury proceedings, the Government had been investigating Dr. Gatz for at least five years for conduct that occurred between 2012 and 2015. All of the facts alleged in the Information were known to the Government before the suspension and it did not obtain any new evidence either immediately before or during the suspension period. Further, the Government could have brought charges against Dr. Gatz in several other districts with open grand juries. Dr. Gatz did not "induce" the Government's current situation, and principles of justice do not demand that the statute of limitations be tolled under the current circumstances.

Ultimately, the ostensible premise of the Government's position is that due to the challenges of the pandemic it should be excused for its failure to afford Dr. Gatz his constitutional right to a timely indictment by grand jury (among the most bedrock

principles of our legal system). Though obscured by the Government's constant reference to COVID-19 throughout its Response, however, the Government does not argue for a pandemic-limited exception in the vein of impossibility. Instead, the Government contends that existing procedural rules permit it to grant itself a six-month extension to obtain a grand jury indictment at will, simply by filing and then dismissing an unconsented-to information. While the backdrop of the Government's action was the pandemic *this time*, once enshrined into law by a decision for the Government in this case, the Government would have a blank check for at least a six-month extension of the statute in every case in its unfettered discretion. *See* DE: 22, Hearing Transcript, Jan. 5, 2021, at 18-20 (Government agreeing with this Court that its statutory interpretation would permit it to grant itself a six-month extension whenever it wants). The fact that Congress could easily have sought to toll or extend criminal statutes of limitation due to the pandemic but chose not to strongly militates against the application of equitable tolling.

Despite the challenges of the pandemic, such a result is unwarranted. As this Court aptly concluded:

> I appreciate that the historical moment we are living through… prevented the Government from obtaining indictments in this District from approximately March 26, 2020, to November 17, 2020. But our legal system has experienced public emergencies before, and it will experience them again. Allowing the applicability of our constitutional norms to ebb and flow with the times is not becoming of a democracy under the rule of law. Indeed, if our laws are to carry any force, they must stand despite the trials and tribulations of society.

D.E. 19 at 19. Because the Government has failed to charge this case within the applicable limitations period through no fault of Dr. Gatz, the Superseding Indictment should be dismissed with prejudice.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:   /s/ David Oscar Markus
      DAVID OSCAR MARKUS
      Florida Bar Number 119318
      dmarkus@markuslaw.com

      /s/ Lauren Doyle Perez
      Lauren Doyle Perez
      Florida Bar Number 117687
      ldoyle@markuslaw.com
