# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 20-80063-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BART GERARD GATZ,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS INDICTMENT

Nearly three years after the statute of limitations expired for Defendant Bart Gerard Gatz's alleged crimes, the Government indicted him. Dr. Gatz had been under investigation for close to five years when the COVID-19 pandemic hit. As time was about to run out to bring charges, no grand juries were convening in this district. In a last-ditch effort to salvage its case, the Government decided to carry out something of a ploy—it bypassed the grand jury, and the Defendant's right to an indictment, and instead filed what was labeled an "Information" three days before the deadline, on a Friday evening. And then it asked me to dismiss that same Information a few days later, without prejudice.

The Government's goal in these maneuverings was effectively to avail itself of a six-month extension of the statute of limitations pursuant to an exception contained within 18 U.S.C. § 3288. But when it filed the "Information," the Government was fully aware that Dr. Gatz did not consent to waiving his Fifth Amendment right to indictment by a grand jury, which is required to be an effective charging instrument. I did not agree with these tactics. I viewed it as an improper end-run around the statute of limitations, and I entered a dismissal with prejudice.

The matter is back before me now because the Government appealed my prior ruling, and the Eleventh Circuit reversed. The panel held that my dismissal with prejudice was improper and remanded for further proceedings. Thereafter, Dr. Gatz could argue that the Government violated the statute of limitations. But that determination could not be made, the panel said, while the case was in the posture of a Rule 48 dismissal. So, after the mandate issued, the Government indicted Dr. Gatz. And now he has filed a Motion to Dismiss on statute of limitations grounds.

I will grant Dr. Gatz's motion and dismiss the Superseding Indictment. This of course will come as no surprise, as my prior order foretold this very result. However, in that order, the statute of limitations analysis was included as a means of explaining why dismissal *with* prejudice, I thought, was warranted under Rule 48. Now, Defendant's statute of limitations defense is squarely before me. The Parties have fully briefed it, and I held oral argument on November 29, 2023. After full consideration of their positions, and upon careful examination of applicable statutes and governing law, I will reaffirm and adopt my prior reasoning, and find that the Government's Superseding Indictment was untimely.

## BACKGROUND

On Friday, August 28, 2020, the Government filed an Information charging Defendant with two felony offenses arising out of his alleged participation in a conspiracy to receive illegal "kickbacks" (in the form of fees for speaking engagements) from a prescription drug distributor in exchange for Defendant's allegedly improper writing of prescriptions for a particular drug. The Information was docketed with the Clerk of Court on Friday, August 28, 2020. (DE 3 at 4–11). The Information states that Defendant committed the alleged offenses from August 2012 to August 31, 2015. (*Id.* at 4, 14). Three days later, on the date that the statute of limitations expired, the Government served the Defendant with the Information at 6:33 PM in the evening. (DE 37 at 2).

Defendant had at no time consented to prosecution by information or waived his right to indictment by a grand jury. (*Id.* at 18). Moreover, Defendant's intentions in this regard were made known to the Government before it chose to proceed by way of information.

Two days later, the Government sought dismissal without prejudice, under Federal Rule of Criminal Procedure 48(a). (DE 8). The Government's position was that its unilateral filing of the Information served to "institute" the prosecution against Defendant before the five years was up under 18 U.S.C. § 3282(a), and its subsequent dismissal would trigger the tolling of the statute of limitations by six months under 18 U.S.C. § 3288.

All of this had been done against the backdrop of the COVID-19 pandemic. At the time, grand juries in the Southern District of Florida had been suspended.[1] In moving to dismiss the Information, the Government asserted that it intended to obtain a grand jury Indictment upon such time as it was able, when grand juries reconvened.

I had some misgivings about the Government's methods, so I ordered supplemental briefing, held oral argument, and ultimately denied the Government's request that the dismissal be without prejudice. Instead, I dismissed with prejudice upon finding that the Government's tactical use of Rule 48, for the specific purpose of evading the statute of limitations, was an impermissible effort to circumvent the law. And allowing the Government to obtain a dismissal by these means would have invited unlawful action, I believed, because the statute had expired, and therefore no further prosecution could be had.

On November 22, 2022, a divided panel of the Eleventh Circuit vacated my dismissal order and remanded. *United States v. B.G.G.*, 53 F.4th 1353, 1370 (11th Cir. 2022). The court held that in dismissing with prejudice, I failed to make a finding that the Government's reasons for the

---

[1] Grand juries were suspended from March 26, 2020, to November 17, 2020.

dismissal amounted to bad faith, which is required to overcome the presumption of good faith to which the Government is entitled under Rule 48. *Id.* at 1369–70. Therefore, the Eleventh Circuit vacated my order of dismissal, which left the Information in effect, and the court remanded for further proceedings against Defendant. The mandate issued on January 31, 2023. (DE 27).

On July 13, 2023, the Government filed a sealed "Superseding Indictment" against Defendant. (DE 30). The Government thereafter moved to dismiss the Information without prejudice. (DE 32). My Order on Remand denies the Motion to Dismiss the Information for lack of subject matter jurisdiction (DE 52).

Before me is the Defendant's Motion to Dismiss Indictment, filed August 4, 2023, (DE 37), to which the Government responded and the Defendant replied (DE 42, DE 47). For all the reasons below, I find that the Indictment was untimely and will grant the Defendant's Motion to Dismiss.

## DISCUSSION

### A. **The Government's Strategy**

Before answering the question of whether the Government's Superseding Indictment was timely, here are the mechanics of how the Government proposes to use the Rules and statutes to claim that it timely filed the Indictment.

The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Federal Rule of Criminal Procedure 7(a) "gives effect to" this constitutional provision by requiring that felonies, defined as offenses punishable by death or imprisonment of more than one year, "be prosecuted by an indictment." Fed. R. Crim. P. 7(a) (quoting 1944 advisory committee's note to subdivision (a)). As an exception to this Rule,

subdivision 7(b) allows the government to charge noncapital felony offenses by way of an information if the defendant waives indictment. Fed. R. Crim. P. 7(b). Title 18, United States Code, Section 3282 provides: "[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found *or the information is instituted* within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (emphasis added).

There is no dispute that the statute of limitations to bring a case against Dr. Gatz expired on August 31, 2020. And there is no dispute that the Government did not indict Defendant until nearly eight years after that date. But the Government argues that this case can proceed because it filed an "Information" on August 28, 2020—three days before the five-year deadline expired. However, for the Government to proceed by information under subdivision 7(b), the charged Defendant must waive his right to a grand jury indictment. *See* Fed. R. Crim. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment."). Here, the Government purported to charge Defendant by Information *without* having received such a waiver, and moreover, while knowing that it would not later receive a waiver.

The legal significance, if any, of the unconsented Information against the Defendant is at the heart of this Motion to Dismiss. That is because the validity of the Information that the Government filed bears directly upon the applicability of an exception to the statute of limitations, which is contained in Title 18, United States Code, Section 3288. That statute enables the Government to toll the limitations period in the following scenario:

> Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar

months of the date of dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date of the dismissal of the indictment or information becomes final, or, if no regular grand jury is in session in the appropriate jurisdiction when the indictment or information is dismissed, within six calendar months of the date when the next regular grand jury is convened, which new indictment shall not be barred by any statute of limitations. This section does not permit the filing of a new indictment or information where the reason for the dismissal was the failure to file the indictment or information within the period prescribed by the applicable statute of limitations, or some other reason that would bar a new prosecution.

18 U.S.C. § 3288.

With these statutory provisions in mind, the Government filed the unconsented Information "to 'institute' it within the meaning of 18 U.S.C. § 3282(a)." (DE 8 at 1–2). With the prosecution underway, at least in the Government's view, it could then avail itself of § 3288's tolling provisions by obtaining a Rule 48 dismissal of the defective Information, without prejudice.

### B. The Meaning of "Instituted."

Whether the Government's Indictment is timely turns upon the meaning of "instituted" as it appears in U.S.C. § 3282, for if the Information was never "instituted," there would be no charging document to voluntarily dismiss under § 3288 so as to buy the Government six more months to seek a grand jury indictment.

At the outset, it also bears emphasizing the well-settled rule that criminal statutes of limitations "are to be liberally interpreted in favor of repose." *Toussie v. United States,* 397 U.S. 112, 115 (1970) (internal citation omitted). This principle aligns with the fundamental purpose of statutes of limitations, namely "to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the damage of official punishment because of acts in the far-distant past." *Id.* at 114–15. I am also guided by the general principle that "[w]hen doubt exists about the statute of limitations in a

criminal case, the limitations period should be construed in favor of the defendant." *United States v. Gilbert*, 126 F.3d 1451, 1454 (11th Cir. 1998) (quoting *United States v Habig*, 390 U.S. 222, 226–27 (1968)).

I now hold, as I did in the first dismissal order, that the unconsented Information did not toll the statute of limitations. The *filing* of an information is not the same as *instituting* it. The common definition of "institute" is "to originate and get established" or to "to set going." *Institute*, Merriam-Webster's Online Dictionary 2023, https://www.merriam-webster.com/dictionary/institute. Black's Law Dictionary defines "institute" as "to begin or start; commence." *Institute*, Black's Law Dictionary (10th ed. 2009). In keeping with these common-sense ideas, I find that "institute" means that the charging instrument must be actually capable of commencing a federal criminal case. An information charging a felony offense, if unaccompanied by a waiver of indictment, cannot commence a criminal case. As Defendant points out, such an "information" is akin to labeling a piece of paper an "indictment" when it was not issued by a grand jury. (DE 37 at 9).

### 1.  *The Supreme Court's Interpretation of "Instituted" in a Similar Statutory Context.*

In *United States v. Jaben*, 381 U.S. 214, 217–220 (1965), the Supreme Court analyzed the meaning of "is instituted," language identical to that at issue here. None of the Justices agreed with the argument now made by the Government.

*Jaben* involved the six-year statute of limitations on the felony of willfully attempting to evade federal income taxes. The statute contained a proviso extending the limitations period for nine months "[w]here a complaint is instituted before a commissioner within the period above limited." I.R.C. § 6531 (1954). On the day before the six-year limitations period expired, the government filed a complaint before the commissioner. *Jaben*, 381 U.S. 214 at 216. The

commissioner found the complaint showed probable cause and issued a summons ordering Jaben to appear for a preliminary hearing. *Id.* The preliminary hearing was never held because an indictment was returned, including a count covering the 1956 attempted evasion the complaint had charged. *Id.* The indictment was not returned within the normal six-year limitations period, but if the complaint filed with the commissioner was valid for the purpose of bringing the extension into play, then the indictment was timely. *Id.* Jaben moved to dismiss the count of the indictment pertaining to 1956 arguing the complaint was insufficient because it did not show probable cause for believing he committed the offense. *Id.*

As it does here, the government argued that "regardless of the complaint's adequacy for any other purposes, it was valid for the purpose of triggering the nine-month extension of the limitation[s] period whether or not it showed probable cause." *Id.* at 217. The Court squarely rejected the government's interpretation:

> The better view of section 6531 is that the complaint, to initiate the time extension, must be adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules. It must be sufficient to justify the next steps in the process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing."

*Id.* at 220. The Court's majority—turning to the question of whether the complaint before the commissioner showed probable cause—concluded that it did.

Justice Goldberg, joined by the Chief Justice Warren and Justice Douglas, concurred in part. They agreed the Court was "quite correct in rejecting the Government's argument that the filing of any complaint which meets the formal requirements of Rule 3 of the Federal Rules of Criminal Procedure is sufficient to toll the statute of limitations." *Jaben*, 281 U.S. 214, 226–227 (Goldberg, J., concurring in part and dissenting in part).

> The Government's argument would, in effect, allow it an additional nine months in every case. Rather, the view that I would accept as correct is that the only complaint that tolls the statute is one that begins effectively the criminal process prescribed by the Federal Rules.

*Id.* at 227. The Justices joined the Court's opinion "insofar as it h[eld] that only those complaints toll the statute of limitations which also start the criminal machinery in motion by leading to a preliminary hearing in compliance with Rules 3, 4, and 5."[2] *Id.*

The Government's effort at distinguishing *Jaben* falls far short. Essentially, it simply argues that *Jaben* dealt with a different statute. It is true the two statutes are different, but the use of the same word in both statutes ("institute"), the close factual similarity between Dr. Gatz's case and *Jaben*, and the Government's identical motivations in maneuvering around the limitations period mean it would be irresponsible to ignore the holding of *Jaben.* Every Justice agreed that to toll the statute of limitations, the operative complaint must be sufficient to effectively begin the criminal prosecution. The context here is the same, and the analysis in *Jaben* is directly applicable.

### 2. *The Government's Reliance on* **Burdix-Dana.**

The Government relies upon an opinion of the United States Court of Appeals for the Seventh Circuit, *United States v. Burdix-Dana,* 149 F.3d 741 (7th Cir. 1998). There, the government filed an unconsented information approximately four days before the statute of limitations expired, and then about two weeks later, after the limitations period had run, the government sought and obtained an indictment for the same offense charged in the previously filed

---

[2] The Justices dissented, however, from that portion of the Court's opinion that found probable cause existed. These Justices found the complaint did not toll the statute of limitations. Justice White and Justice Black concurred with the judgment, agreeing with the Court that the complaint supplied an adequate foundation that probable cause existed. *Jaben,* 281 U.S. 214, 225–226 (1965) (White. J., concurring in the judgment).

information. *Id.* at 742. The defendant moved to dismiss that indictment as violative of the statute of limitations, and the Seventh Circuit affirmed the district court's denial of that motion. The panel held that the mere filing of the information was sufficient to "institute" it under 18 U.S.C. § 3282. *Id.* at 743. And after the *Burdix-Dana* decision, many other district courts followed suit.[3]

*Burdix-Dana* is not binding upon me, and moreover, I do not believe that it was correctly decided. To arrive at its holding, the court declined to equate "institute" with "the ability to proceed with a prosecution." *Id.* at 742. But the court did not devote any meaningful effort to explaining the reasoning for its holding, even while acknowledging that Rule 7(b) does not permit a defendant to be prosecuted for a felony offense based upon an unconsented information. Rather, the court held, in conclusory fashion, that "institute" and "file" are synonymous. I decline to equate two different words, with two different plain meanings.

I remain persuaded by the reasoning of the district court in *United States v. Machado*, No. CRIM.A.04-10232-RWZ, 2005 WL 2886213 (D. Mass. Nov. 3, 2005). There, Judge Zobel held "institute" does not mean "file," and she dismissed charges as time-barred where the government had filed an unconsented information within the limitations period but did not obtain a waiver of

---

[3] In the twenty-five years since *Burdix-Dana*, a number of federal district courts have applied its holding in the same, or substantially similar circumstances. *See, e.g., United States v. Holmes*, No. 18-cr-00258, 2020 WL 6047232, at *8 (N.D. Cal. Oct. 13, 2020); *United States v. Briscoe*, No. CR RDB-20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020); *United States v. Marifat*, WBS-17-0189, 2018 WL 1806690, at *1–2 (E.D. Cal. Apr. 17, 2018); *United States v. Sharma*, No. 4:14-CR-61, 2016 WL 2926365, at *2–3 (S.D. Tex. May 19, 2016). One district court decision that predated *Burdix-Dana*, *United States v. Watson*, 941 F. Supp. 601, 603–04 (N.D. W. Va. 1996), similarly concluded that "an information is 'instituted' when it is filed with the clerk of court." It reasoned that "the filing of the information, and not the Rule 7(b) waiver of indictment, is the event critical to tolling the applicable limitations period; otherwise, there could be no valid basis for prosecution on an information until a Rule 7(b) waiver had occurred." *Id.* at 603 (relying on the implicit reasoning in a Tenth Circuit case, *United States v. Cooper*, 956 F.2d 960 (10th Cir. 1992)).

indictment until after the statute had run. *Id.* at *2. Judge Zobel expressly disagreed with *Burdix-Dana*, concluding that "[i]t defies logic and reason that the court may accept an information without waiver for the purpose of applying the statute of limitations, when that same document is 'meaningless' for purposes of subject matter jurisdiction and prosecution." *Id.*; *see also US v. Sharma*, No. 4:14-CR-61, 2016 WL 2926365, at *4 (S.D. Tex. May 19, 2016) (unconsented information was not sufficient to toll the statute of limitations, finding "no case was 'initiated' that the government was 'able to prosecute'"). Like Judge Zobel, I find § 3282 presupposes that an instituted information can initiate a criminal prosecution. After all, an information is a charging instrument whose primary practical purpose, aside from apprising a defendant of the charges against him, is to commence a prosecution. It would be inconsistent with the Fifth Amendment and Federal Rule of Criminal Procedure 7 to recognize an invalid charging document as a mere mechanism for extending a statute of limitations period, though the same legal instrument could not serve to initiate criminal proceedings on the charges contained therein or confer subject matter jurisdiction on the court in which those proceedings are to take place.

Moreover, the ordinary practice of prosecutors supports the notion that a felony information filed without a waiver means little to nothing. That is why, as the Government concedes, prior to filing a criminal information, the prosecutor and defense counsel discuss whether a defendant consents to proceed by way of information; if a defendant does not, then the prosecutor will not file an information absent a contemporaneous waiver of indictment. (DE 22 at 27–28). The Government in this case has acknowledged that prosecutors follow this procedure precisely because a waiverless information cannot be used to prosecute a defendant. (*Id.*).

The aberrant nature of the Government's filing is further demonstrated by both the Department of Justice's ("DOJ") Criminal Resource Manual and the Criminal Data Program

Statistical Reporting Guide of the United States Courts. The DOJ Criminal Resource Guide states: "An information may be used when the defendant has waived an indictment" and further advises: "The prosecuting attorney files the information with the presiding judge or magistrate but the filing does not occur until the defendant waives prosecution by indictment pursuant to Fed. R. Crim. P. 7(b)."[4]

The Criminal Data Program Statistical Reporting Guide maintained by the Administrative Office of the United States Courts, Judiciary Data and Analysis Office provides: "A felony proceeding initiated by information, whether sealed or not, becomes reportable *when the defendant waives the right to be prosecuted* by indictment in accordance with Rule 7(b) Federal Rules of Criminal Procedure."[5]

### 3. *The Legislative History of § 3282.*

Historical context surrounding both the use of informations and grand jury indictments buttresses my conclusion that "institute" means an information must be viable; it cannot simply be a piece of paper that is filed with the clerk of court. The institution of the grand jury is as old as the common law itself.[6] In the colonies, the first regular grand jury was established in 1635.[7] An

---

[4] *§ 206: When An Information May Be Used*, DEP'T OF JUST. (updated Jan. 22, 2020), https://www.justice.gov/archives/jm/criminal-resource-manual-206-when-information-may-be-used.

[5] Criminal Statistical Reporting Guides Working Group and Judiciary Data and Analysis Office, *Criminal Data Program Statistical Reporting Guide*, V.2.2 JNET at 7 (2020), https://jnet.ao.dcn/resources/statistics/reporting-guides/criminal-statistical-reporting-guide.

[6] *See* 1 JAMES FITZJAMES STEPHEN, A HISTORY OF THE CRIMINAL LAW OF ENGLAND 253 (London, MacMillan & Co. 1883) ("The system of accusation which led up to, and to use a modern legal expression 'sounded' in ordeal, was the origin of the grand jury of later times, and of our own days.").

[7] RICHARD D. YOUNGER, THE PEOPLE'S PANEL: THE GRAND JURY IN THE UNITED STATES, 1634-1941 6 (1963).

information, as a charging instrument, dates back to at least the seventeenth century. But notably the use of informations was confined to "mere misdemeanors only: for, whenever any capital offence [was] charged, the same law require[d] that the accusation be warranted by the oath of twelve men, before the party [was] put to answer it."[8] In fact, "[b]y the law of England, informations by the Attorney-General, without the intervention of a grand jury, were not allowed for capital crimes, nor for any felony." *Ex Parte Wilson*, 114 U.S. 417, 423 (1885) (emphasis added).

In this manner, the first Congress enacted the statute of limitations for "Offenses not capital"—what we know today as 18 U.S.C. § 3282—through the Crimes Act of 1790, the first statute detailing a comprehensive list of federal crimes and their punishments.[9] The language of the statute has largely remained unchanged over the past 230 years, but the original 1790 version provided: "No person shall be prosecuted, tried, or punished, for any offense not capital, except as provided in section one thousand and forty-six ["Crimes under the revenue laws"], unless the indictment is found, or the *information is instituted* within two years next after such offense is committed."[10] Subsequent amendments have extended the limitations period from two to three and finally five years. The statute predates Rule 7 of the Federal Rules of Criminal Procedure by 154 years. When Congress first drafted the phrase "information is instituted," it could not possibly have intended that an instituted information be one that is merely filed because Rule 7 of the Federal Rules of Criminal Procedure subsequently outlines the conditions that must additionally

---

[8] 4 William Blackstone, Commentaries on the Laws of England in Four Books 310 (Philadelphia, J.B. Lippincott Co., 1893).

[9] *See Crimes Act,* FED. JUD. CTR., https://www.fjc.gov/history/timeline/crimes-act.

[10] Act of April 30, 1790, ch. 9, §32; 1 Stat. 119 (emphasis added).

be met to initiate prosecution, as the Government is now arguing. In 1790, Rule 7 did not yet exist. Instead, an "instituted information" needed to be one that sufficiently initiated a prosecution.

The Crimes Act of 1790 chronologically predates the Fifth Amendment, which was ratified one year later in 1791. However, unlike its lack of familiarity with the nonexistant Rule 7 of the Federal Rules of Civil Procedure, the First Congress was very aware of the ongoing practice of felony indictments by a grand jury and the limited use of informations solely for misdemeanors. Both before 1790 and in the years following, informations "were principally, if not exclusively, used for the recovery of fines and forfeitures, such as those imposed by the revenue and embargo laws." *Ex Parte Wilson*, 114 U.S. at 424–25. And although the right to a grand jury was not yet enshrined in the Constitution, the drafters of the statute of limitations in the Crimes Act of 1790 contemplated and knew that felony charges were only brought by indictment, and only lesser offenses could be brought by way of information. This is no inference but confirmed by historical accounts and the Supreme Court. Justice Story, writing in 1833 of the practice of criminal informations, said, "[T]his process is rarely recurred to in America; and it has *never* yet been formally put into operation by any positive authority of Congress, under the national Government, in mere cases of misdemeanor; though common enough in civil prosecutions for penalties and forfeitures." *Id.* at 425 (emphasis added). Despite the fact that it codifed the Crimes Act of 1790 before the Fifth Amendment, the First Congress likely intended that the two comport with one another, as at the time the statute passed, the Bill of Rights had already been drafted, edited, and sent to the states for ratification.[11]

---

[11] *See e.g.,* AKHIL AMAR, THE WORDS THAT MADE US: AMERICA'S CONSTITUTIONAL CONVERSATION, 1760 – 1840, 314 (2021).

Ultimately, the Fifth Amendment's ratification in 1791 cannot be interpreted as correcting the ostensible practice of charging felonies by information that was supposedly enshrined in the Crimes Act of 1790. No such practice was occurring or had ever occurred, and the same Congress drafted both the statute and the Fifth Amendment. When drafting the Act, Congress knew that informations were limited in practice to misdemeanors and that soon, due to constitutional rights, felony charges would only be brought by indictment.

With this context in mind, the legal concept of a defendant accused of a felony waiving his constitutional right to prosecution by grand jury indictment did not emerge until the twentieth century. *See, e.g.*, *United States v. Gill*, 55 F.2d 399, 401 (D. N.M. 1931). Initially, in the first half of the twentieth century, some states amended their constitutions and statutes to allow for prosecution of noncapital felonies by information.[12] Congress thereafter followed suit with Rules 7(a) and (b) of the Federal Rules of Criminal Procedure.[13]

Title 18, United States Code, section 3288, unlike section 3282, expressly applies to felony charges. 18 U.S.C. § 3288 ("Whenever an indictment or information charging *a felony* is dismissed . . . .") (emphasis added). Congress originally enacted § 3288 in 1948.[14] Prior to the codification of 18 U.S.C. § 3288, a very similar statute, enacted in 1934, was in effect that provided:

> Whenever an indictment is found defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned at any time during the next succeeding term of court following such finding, during which a grand jury thereof shall be in session.[15]

---

[12] Charles S. Potts, *Waiver of Indictment in Felony Cases*, 3 Sw. L. Rev. 437, 437–42 (1949).

[13] *Id.*

[14] Act of June 25, 1948, ch. 645, 62 Stat. 628.

[15] Act of May 10, 1934, ch. 278, 48 Stat. 772.

In *United States v. Durkee Famous Foods*, 306 U.S. 68, 71 n.2 (1939), the Supreme Court identified the legislative intent of 18 U.S.C. § 587 (now 18 U.S.C. § 3288) as that expressed in a 1934 letter from the attorney general to the Senate Judiciary Committee, which stated in part that "legislation is recommended providing that in any case in which an indictment is found defective or insufficient for any cause, after the period prescribed by the statute of limitations has run . . . a new indictment may be returned at any time during the first succeeding term of court at which a grand jury is in session." In 1964, Congress amended § 3288 "to correct a 'loophole' in the law which occurred when it became possible to charge [felonies] by information as well as indictment." *United States v. Charnay*, 537 F.2d 341, 353–54 (9th Cir. 1976). As Senate Report 1414 stated in reference to the 1964 changes, precipitated in part by a letter from then-Attorney General Robert F. Kennedy,

> The purpose of the proposed legislation is to amend sections 3288 and 3289 of title 18, United States Code, so as to provide that the provisions of those sections will extend to felony proceedings instituted by information as well as by indictment. The sections concern cases where a new indictment is returned after a prior indictment has been dismissed, because of an error, defect, or irregularity with respect to the grand jury, or because it has been found otherwise defective. *The amendments would therefore permit reindictment in similar cases where an information was filed after the defendant waived in open court prosecution by indictment.*[16]

The legislative history of § 3288 indicates that although the statute permits tolling of the limitations period specifically for felonies, Congress did not intend to create a means to bypass the statute of limitations altogether by filing a defective information. The 1964 amendments "extend[ed] the application of the statutes to felony proceedings instituted by information rather

---

[16] S. REP. NO. 88-1414, at 1 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3257–58 (emphasis added).

than by indictment."[17] Congress amended the statutes in this manner in response to Federal Rule of Criminal Procedure 7(b), given that

> [a]t the time of the enactment of the statutes from which sections 3288 and 3289 are derived, felony prosecutions could be initiated only by grand jury indictment. However, rule 7 of the Rules of Criminal Procedure for the U.S. District Courts, authorizes the prosecution of a noncapital felony by information if the defendant in open court waives prosecution by indictment.[18]

Thus, this legislative history demonstrates that Congress intended §§ 3288 and 3289 to toll the limitations period at § 3282 for dismissed informations where those informations comported with Rule 7(b).

Because the historical record indicates that individuals accused of noncapital felonies could not waive indictment and consent to proceed by way of information at the time that Congress created § 3282's predecessor, it follows that when Congress first wrote "information is instituted" in 1790, it likely intended that the filed information would constitute a valid charging document, which at the time meant a document that adequately charged a misdemeanor or lesser offense. The idea that an ineffective information could be instituted to toll the limitations period, but not to prosecute the accused, could not have been a consideration at the statute's inception, nor at the time § 3288 or its predecessor were enacted.

### 4. The Government's Textual Analysis.

The Government puts forth several arguments urging the correctness of its interpretation of "instituted," based both on its view of the meaning of the legislative history, and canons of

---

[17] *Id.*

[18] *Id.* at 2 (proceeding to quote Federal Rule of Criminal Procedure 7(b)). The Report continued, "The proposed amendments recognize that felony prosecutions may be instituted by informations and that dismissals of such prosecutions because of technical defects in the informations should be accorded treatment similar to that accorded prosecutions instituted by indictments." *Id.*

statutory construction. Although its precise position is not clear with respect to the extent to which it disputes my recitation of the legislative history, the Government in its Response brief does posit an alternative reading of congressional intent. For instance, the Government attributes significance to the idea that Congress has never altered or amended or deleted the "information is instituted" language to give it a "deeper or different meaning," despite the fact that since 1946, § 3282(a) has been amended four times, and all the while "Congress knew that, under Rule 7(b), defendants charged with felony offenses had to waive their right to prosecution by indictment before they could be adjudicated on an information." (DE 42 at 12). The Government also points to the fact that Congress amended the statute after *Burdix-Dana* and its progeny were decided, and "in the face of that consistent body of common law interpreting what 'instituted' means" in § 3282(a), it did not act to clarify the meaning. I do not find these arguments compelling at all. In my view, the Government vastly overstates the meaning of Congressional "inaction" in this context. I do not view Congress's inaction as the benchmark for interpreting the statutory language here because Congress may have decided not to act for a variety of reasons. And such reasons might be wholly unrelated to its agreement or disagreement with the way the Government has interpreted this statute.

The Government also suggests that for statute of limitations purposes, an indictment can be "found" by the grand jury before it is returned (or publicly filed). It says that a prosecution cannot go forward without the indictment *return*, yet it is the "finding" of the indictment that renders it timely under § 3282. Analogizing, the Government goes on to argue that in the case of a felony information, the "instituting" of it (by filing it) renders it timely, even though the defendant's formal waiver is a separate, and later, procedural event. Therefore, according to the Government, the charging document is timely upon the first event, even if the prosecution cannot

ultimately progress without the second. If I understand the Government's argument correctly, it seems to be effectively equating the requirement that a defendant waive a fundamental constitutional right with the technical public filing of an indictment that has already been found by a grand jury. But it seems to me that the event of procedural significance is the satisfaction of the constitutional requirements in each situation. The constitution is satisfied once a grand jury indicts. The constitution is *not* satisfied, however, if a defendant charged with a felony offense does not waive his right to indictment.

In short, the Government's arguments in no way undermine my conclusions about the meaning of "instituted." Even were I to accept (which I do not) some of the Government's textual analysis—much of which I view to be somewhat tortured and overly technical—I cannot help but come back to the idea that ultimately, the Government's proposed interpretation would lead to an absurd result. It is well settled that "statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *In re Chapman,* 166 U.S. 661, 667 (1897); *see also United States v. Turkette,* 452 U.S. 576, 580 (1981) ("absurd results are to be avoided" in construing statutes). And the requirement that statutes not be given an absurd construction can even override plain meaning, when necessary. As the Eleventh Circuit has recognized: "There is, of course, a well-established absurdity exception to the plain meaning doctrine." *Miccosukee Tribe v. South Everglades Restoration Alliance,* 304 F. 3d 1076, 1086 (11th Cir. 2002). In this case, I think that the absurdity canon bars the interpretation that the Government urges—namely, that "instituted" in § 3282 plainly encompasses the filing of an information that cannot initiate a prosecution. The Government should not be able to grant itself a six-month extension of the statute of limitations whenever it wants, in every case, simply by filing a patently defective and meaningless charging

document, and then immediately dismissing it to invoke the savings provisions of § 3288. As Defendant aptly notes: "While the backdrop of the Government's action was the pandemic *this time,* once enshrined into law by a decision for the Government in this case, the Government would have a blank check for at least a six-month extension of the statute in every case in its unfettered discretion." (DE 37 at 7).

### C. Equitable Tolling

When this matter was before me previously, the Government chose to rely solely on its interpretation of § 3288's savings clause, and it expressly declined to argue for a pandemic-limited exception to the statute of limitations, or to otherwise invoke principles of equitable tolling. Perhaps this is because the use of the doctrine of equitable tolling within the context of a criminal statute of limitations is questionable, as I will explain below. Whatever the reason, the Government now states that "to the extent that the United States previously waived any argument as to equitable tolling, the United States withdraws that waiver." (DE 42 at 22).

I am not convinced that the Government can effectively "withdraw" its waiver at this stage of the proceedings. In seeking to do so, the Government interjects a wholly new ground for its proposed outcome, and it raises this ground for the first time in a post-remand response brief in opposition to Defendant's Motion to Dismiss. The Government could have made these arguments earlier, and it explicitly declined to do so. I therefore have concerns about permitting it to do an about-face at this point of the proceeding. *See Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 958 (11th Cir. 2009) (internal quotation and citation omitted) (refusing to give a party a "second bite at the apple" after failing to raise an argument before the district judge); *see also United States v. Sharp,* 21 F.4th 1282, 1287 (11th Cir. 2021), *cert. denied,* 143 S. Ct. 195 (2022) (allowing the government to raise an argument for the first time on appeal due to a change in law but explicitly

noting that the holding was limited to cases "where an intervening change in the law occurs within the period of time allotted for filing a notice of appeal."). Moreover, it certainly prejudices the Defendant to have to rebut these new arguments three years into the proceedings, after multiple rounds of substantive briefing, both in this Court and on appeal.

Further, the Government fails to cite anything particularly helpful in support of its position that it can revoke an explicit waiver of an argument after appeal. The single case it claims provides the authority for withdrawal is inapposite. In *Stevens v. Marks*, 383 U.S. 234, 244 (1966), the Supreme Court held a witness testifying before the grand jury effectively revoked the waiver that he had signed of his Fifth Amendment rights. In that case, the prosecutors threatened the witness to sign the waiver on threat of losing his job but did not grant the witness "a valid immunity from subsequent prosecution." *Id.* at 241. The Court held that a witness has "a constitutional right to stand on the privilege against self-incrimination until it has been fairly demonstrated to him that an immunity, as broad in scope as the privilege it replaces, is available and applicable for him." *Id.* at 246. Because the witness's waiver was invalid originally, his revocation of the waiver was valid. *Id.* at 243. Arguing that this case stands for the proposition the government can revoke a waiver of an argument after three years of litigation and an appeal is tenuous at best. I agree with the Defendant that in the interest of fundamental fairness, "[t]he Government should not have the ability to cherry-pick alternative tolling theories at various points in the litigation when it suits them." (DE 47 at 11).

Regardless, in the interest of completeness, I will address the merits of whether equitable tolling should apply in this criminal proceeding.

As the Government acknowledges, equitable tolling is more commonly applied in civil cases. (DE 42 at 23). There is little authority for the idea that it can extend to the criminal context.

In fact, the Third Circuit appears to be the only circuit that has broached the idea that equitable tolling can apply to criminal statutes of limitation. *See United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (internal citations omitted) (holding that equitable tolling might apply in a criminal context in three scenarios: the defendant has actively misled the plaintiff, the plaintiff "in some extraordinary way" was "prevented from asserting his rights," or the plaintiff brought the criminal complaint in a timely fashion but in the incorrect forum); *see also United States v Levine*, 658 F.2d 113, 120 (3d Cir. 1981) ("Statutes of limitations further reflect an underlying legislative balance insofar as different crimes carry different time periods, and the statutes are subject to tolling, suspension and waiver."). But even the Third Circuit when confronted with equitable tolling of a criminal statute of limitations seems apprehensive to apply it. *See United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005) ("This court has never applied equitable tolling to rescue a Government indictment filed after the statute of limitations has lapsed, and we see no convincing rationale to do so here.").

Indeed, the Government cites nothing binding on this Court for the idea that a criminal statute of limitations can be equitable tolled; it relies instead on the general premise that certain other types of time limits in criminal cases can be subject to equitable tolling, such as the time for filing a notice of appeal or the time for filing a habeas petition. (DE 42 at 23, citing *Fallen v. United States*, 378 U.S. 139, 144 (1964), *Grant v. Swarthout*, 862 F.3d 914, 923 (9th Cir. 2017)). But these post-conviction deadlines are different—and arguably less significant—procedural events in the life of a criminal case. Thus, I am reluctant to equate the tolling of such deadlines to the tolling of the statute of limitations to bring charges.[19]

---

[19] I have equitably tolled a criminal statute of limitations in the past due to COVID-19. *See United States v. Xavier*, Case No. 20-80054 (2020). The facts alleged in that case were different; some of the counts clearly fell within the statute of limitations. Moreover, having now studied the issue

But even if equitable tolling does apply in criminal cases, I am not persuaded by the Government's arguments that the limitations period should be tolled in Defendant's case for several reasons. In part, I find it difficult to square with the fact that Congress expressly decided not to adopt legislation that would have tolled statutes of limitations during the pendency of the COVID-19 shutdown. Early in the pandemic, the DOJ lobbied for legislation that would have suspended or tolled criminal statutes of limitation, but a bipartisan Congress soundly rejected such a request. Indeed, as Defendant notes, DOJ's proposed legislation was widely condemned across the political spectrum. (DE 47 at 6, quoting individual Congress members' responses to the DOJ initiative).

Moreover, the considerations governing application of the doctrine of equitable tolling do not weigh in the Government's favor. I glean from relevant caselaw that the doctrine contemplates the following: First, that a party must show that it was prevented from bringing the action because of inequitable circumstances and that those circumstances were outside that party's control. Second, that the party seeking to invoke the doctrine be without any fault or want of diligence. Third, tolling must comport with sound legal principles and must be in the interest of justice. And all of these factors must be applied bearing in mind that the equitable tolling doctrine should be invoked only sparingly and under very narrow circumstances.

Here, the Government's inability to indict the Defendant on time was partly due to its own delay. Dr. Gatz was under investigation between 2012 through 2015. All of the facts alleged in the Information were known to the Government before grand juries were suspended, and no new

---

more closely, I question whether that was the right result. Regardless, in *Xavier*, the Defendant pleaded to the Count that fell within the statute while those arguably outside the statute were dismissed.

evidence came to light immediately before or during the shutdown. At oral argument prior to my first order of dismissal, counsel for the United States advised that the Government conducted one interview related to this case during the grand jury suspension. (DE 22 at 23). In this sense, the inability to comply with the limitations period was not due to circumstances wholly out of the Government's control. I recognize, as the Government points out, that the Eleventh Circuit has held that "[t]he government has no constitutional duty to indict as soon as the prosecutor has probable cause to believe that the defendant is guilty." *United States v. Dyal,* 868 F.2d 424, 429 (11th Cir. 1989). But if the Government seeks to invoke this exceedingly rare tolling doctrine, the manner and timing of its investigation should be subject to fair scrutiny. When examining the specific circumstances at play here, it is apparent to me that the pandemic is no excuse for the delayed indictment of the Defendant.

Moreover, the Government was not out of options. It has not sufficiently explained why it could not have sought an indictment in another district, where active grand juries were sitting despite the pandemic shutdown. On August 31, 2020, there were at least nine available districts in which the Government had previously indicted INSYS cases similar to Dr. Gatz's case, all of which had grand juries that were convening. (*See* DE 37 at note 1). This would seem to render the indictment of the Defendant in a different district a viable option.

Finally, the superseding Indictment alleges acts by the Defendant occurring between August 2012 and August 2015, all over eight years ago. In my view, any prejudice suffered by the Government caused by the pandemic is outweighed by that of Dr. Gatz in defending against these delayed charges. Thus, dismissing the untimely Superseding Indictment in this case would serve to honor the protections afforded by law to the Defendant

## CONCLUSION

The Government's attempted workaround brings to mind a transgression from the world of sport. During an intentional grounding on the football field, the quarterback drops back to pass, but just before being tackled for a loss, throws a forward pass with no chance of completion and no receiver in the vicinity. Intentional grounding draws a flag, loss of a down, and a penalty of ten yards from the previous spot. In the end zone, it results in a safety.[20]

Here the Government filed a charging document that could not lead to a successful prosecution. Facing an expiring statute of limitations, the Government filed an information for a felony crime knowing that the Defendant was unwilling to waive his Fifth Amendment right to indictment by a grand jury. The Government admits that the Information cannot begin or initiate a prosecution and admits that its only purpose is to toll the statute of limitations. The Government also argues that through this ploy, it can in every case unilaterally convert and extend the applicable statute of limitations by six months.[21] For all the reasons explained above, I do not believe that can possibly be right.

Although I acknowledge that this gambit has gained some traction, including from excellent judges in this district, I believe it ultimately fails because of the language of the statute,

---

[20] "It is a foul for intentional grounding if a passer, facing an imminent loss of yardage because of pressure from the defense, throws a forward pass without a realistic chance of completion. A realistic chance of completion is defined as a pass that is thrown in the direction of and lands in the vicinity of an originally eligible receiver." *See Official Playing Rules of the National Football League*, Rule 8 Section 2 (2023).

[21] At oral argument on November 29, 2023, I asked the prosecutor if this option is "available to you in every case," to which she replied, "I do believe so, your Honor, because Congress said 3288 whenever an indictment or information charging a felony is dismissed for any reason." I followed up and asked "you don't think that means an effective information or a valid or operative information . . . . It just means something that's called an information?" The prosecutor responded, "Exactly."

its legislative history, a decision of the Supreme Court analyzing the same language in a similar statute, and the guarantee of the Fifth Amendment.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss Indictment (DE 37) is **GRANTED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this ___ day of December, 2023.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record